OPINION OF THE COURT
Fuchsberg, J.
Confronting in this case the increasingly common use of arbitration in the context of a dispute between former *292 spouses, we hold that a separation agreement’s broadly worded arbitration clause, which additionally draws attention to matters specifically made arbitrable elsewhere in the agreement, does not confer authority upon the arbitrator to pass on the husband’s claim that changed circumstances warranted a downward modification of the agreement’s support provisions.
After nearly 17 years of marriage, in April of 1972 John and Dorothy Bowmer entered into a lengthy and detailed separation agreement which, as later incorporated but not merged in a judgment of divorce, provided for the husband’s payment of alimony and support for their three minor children pursuant to a carefully arranged formula. Its arbitration clause, numbered paragraph 17, reads in pertinent part: "Any claim, dispute or misunderstanding arising out of or in connection with this Agreement, or any breach hereof, or any default in payment by the Husband, or any matter herein made the subject matter of arbitration, shall be arbitrated”.
As the clause suggests, at various points the agreement delineated certain matters that were expressly made arbitrable, including adjustments in the support formula (upon the stated contingencies that the tax laws were amended to make support payments taxable to the husband and that the Government’s cost of living index was discontinued or its method of publication altered) and in the extent of the husband’s obligation to underwrite college costs should the parties disagree over the husband’s ability to meet them.
The present dispute had its genesis in July, 1977, when Bowmer informed his former wife that, because of changed circumstances, as of February, 1978 he would reduce his support payments by almost $1,000 per month and make no further tuition payments.[1] She refused to accede to this plan or to his alternative informal request that they submit the question to arbitration. Thereafter, when he nevertheless unilaterally undertook to make these downward adjustments, Ms. Bowmer invoked the arbitration clause to compel him to pay the arrearages. Her former husband then commenced this proceeding to stay the arbitration she had commenced and to compel arbitration on the issues of whether he was entitled to downward modification of his monetary obligations consistent *293 with the steps he had taken. Contemporaneously, Bowmer filed his own demand for arbitration on these and a third issue.[2] She, in turn, cross-moved to stay the arbitration he had initiated, contending that, except for the question of his deferment of the children’s educational expenses, the issues he raised were nonarbitrable.[3] In due course, Special Term consolidated both arbitration proceedings, denied her motion and directed that arbitration proceed on the issues Bowmer had raised.
But, on Ms. Bowmer’s appeal from so much of the order that directed arbitration on the issue of reduction in the level of support payments, the Appellate Division modified, holding that issue to be nonarbitrable (67 AD2d 8, 10). On the former husband’s appeal to us, therefore, the sole question is whether the arbitrator may properly consider the claim for downward modification on the support obligations. For the reasons which follow, we conclude he may not and, therefore, wé now affirm the order from which this appeal arises.
Arbitration clauses are by now familiar provisos in separation agreements. Indeed, aside from expressing the parties’ preference for a means of dispute resolution more informal, more expedient and possibly less costly than litigation (Matter of Siegel [Lewis], 40 NY2d 687, 689), an arbitration provision may well have been intended to furnish insulation from the potential for notoriety and other stresses that so often accompanies the airing of marital disputes in court (see Matter of Lasek v Lasek, 13 AD2d 242, 244). Moreover, resort to the arbitral forum may afford the spouses an opportunity to have their grievances heard by someone who they think may be especially well qualified in matrimonial matters. (See 1 Lindey, Separation Agreements and Ante-Nuptial Contracts, §29.)
But as with such provisions in the commercial context generally, the rule is clear that unless the agreement to arbitrate expressly and unequivocally encompasses the subject *294 matter of the particular dispute, a party cannot be compelled to forego the right to seek judicial relief and instead submit to arbitration (see Gangel v De Groot, 41 NY2d 840, 841). Examining the clause in paragraph 17 with this precept in mind, we first observe the standard, broadly framed directive to submit to arbitration "Any claim, dispute or misunderstanding arising out of or in connection with” the agreement (see, e.g., Matter of Stone [Freezer], 280 App Div 103, affd 304 NY 649; Braverman v Braverman, 9 Misc 2d 661). However, there is more. As indicated earlier, the clause goes on to state that elsewhere in the agreement particular matters, apparently of special import to the spouses, are expressly made arbitrable. Paragraph 17 therefore seems to be something of a hybrid, containing wording ordinarily present in both broad and limited arbitration clauses; hence, we should not reflexively attribute to the parties an intention to have every possible dispute go to arbitration (cf. Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.], 306 NY 288, 291; Matter of Macy & Co. [National Sleep Prods.], 39 NY2d 268, 271).
For, though the parties might well have thought that the particularized matters were subsumed under the general arbitration language — in which case they could be understood as merely intending to emphasize the arbitrability of certain disputes — the inclusion perhaps more reasonably suggests that the spouses viewed the general language somewhat qualifiedly. This accords with the rule of construction that, in such cases, the specific provisions tend to restrict the general (see 4 Williston, Contracts [3d ed], § 624, pp 822-825). Thus, rather than place reliance on a single boilerplate proviso,[4] the parties were careful to direct explicitly that arbitration be the remedy for several critical and foreseeable conflicts on the extent of the husband’s support obligation.
Further evidence that the arbitration clause was not intended to encompass the dispute here comes from the fact that the support provisions themselves were particularly detailed and drawn flexibly to anticipate changes in the spouses’ circumstances. Exemplifying this is the agreement’s design for a sliding scale of support payments equivalent to 50% of the husband’s gross income, but in no event less than $14,000 or more than $30,000, less an amount equivalent to one half of *295 the wife’s gross income over $9,000. "Gross income” was itself meticulously defined and made to reflect, at least in part, the financial condition of the parties: for instance, depending on whether Bowmer’s gross income was below or above $50,000 he was either to include or exclude from that figure payments from his employer’s profit-sharing plan. On top of all this, of course, the cost of living index guaranteed a broader kind of responsiveness to economic variations.
The sense of these provisions, taken together, is to indicate that the parties gave their attention to the possibility of changed circumstances and tried to address the problem by injecting elasticity into the support formula itself. Given this and the fact that the husband’s obligation to pay for the costs of his children’s college education was expressly made modifiable under changed circumstances and specifically made the subject of arbitration, it is significant that neither the modification nor arbitrability of the more fundamental support obligation is addressed by any term of the 37-page separation agreement.
The omission becomes especially important in light of the inability of courts to effect any change in an adequate level of support fixed by a valid and unimpeached separation agreement unless it has been merged in a judgment of divorce (Goldman v Goldman, 282 NY 296, 302-304; Schmelzel v Schmelzel, 287 NY 21, 26-27; 2 Foster and Freed, Law and the Family, § 28.64). Of course, had they so intended, the parties could have agreed that the support provisions be modifiable by judicial proceedings under appropriate circumstances (see Kleila v Kleila, 50 NY2d 277; Hunter v Hunter, 57 AD2d 797). But they did not. And, although the power to alter the support provisions in a separation agreement may likewise be conferred upon on arbitrator (Matter of Robinson [Robinson], 296 NY 778; Matter of Luttinger [Luttinger], 294 NY 855), the cases so holding have involved contracts explicitly authorizing such relief (see Braverman v Braverman, 9 Misc 2d 661, supra; Storch v Storch, 38 AD2d 904; 1 Lindey, Separation Agreements and Ante-Nuptial Contracts, § 29, pp 29-13 to 29-15). Against this background — the frame of reference of the drafters of this detailed and comprehensive document — appellant’s claim that a downward modification of support "arises out of or in connection with” the terms of the agreement is hardly persuasive.
More fundamentally, what appellant seeks, in essence, is to *296 have the arbitrator rewrite the terms of the agreement because he now views them as onerous. This cannot be considered merely a claim arising from the contract. Instead, it requires the making of a new contract, not by the parties, but by the arbitrator. Obviously, the parties never agreed to such a procedure for it would mean that, once the agreement made provision for arbitration, the arbitrator would be completely unfettered by the terms of the contract in resolving disputes. Nor is our refusal to place the power to change the support provisions within the scope of the arbitration clause to be considered an impermissible attempt to precensor the type of relief available to the arbitrator. While, as a general rule, once a controversy is properly before the arbitrator he has wide discretion in his choice of remedies (Matter of Paver & Wildfoerster [Catholic High School Assn.] 38 NY2d 669, 677), the power to formulate flexible solutions cannot be used as a bootstrap for an unpredictable expansion of the parameters of arbitral authority (cf. Garrity v Lyle Stuart, Inc., 40 NY2d 354, 359).
Appellant insists that our decision in Matter of SCM Corp. (Fisher Park Lane Co.) (40 NY2d 788) sanctions such an arbitral rewriting. However, the rationale of that case was considerably more limited. There, though holding that a landlord’s counterclaim for reformation was time-barred, we took the occasion to state that the arbitrator, acting pursuant to a broad arbitration clause, could permissibly reform the terms of a lease on the landlord’s assertion that the instrument failed to conform to the parties’ original intent (40 NY2d, supra, at pp 792-794; see International Union of Operating Engrs. v Carl A. Morse, Inc., 529 F2d 574, 580; American Home Assur. Co. v American Fid. & Cas. Co., 356 F2d 690, 692). Reformation of a contract to express what the parties in fact agreed upon has been held to be a claim which arises out of the contract, in contradistinction to modification of contract terms to reflect changed circumstances, a claim of a fundamentally different nature, which finds no basis at all in the agreement (see Matter of Agora Dev. Corp. [Low], 19 AD2d 126, 127; cf. Matter of Lipman [Haeuser Shellac Co.], 289 NY 76, 79). Pointedly, appellant nowhere suggests that by reason of accident, mistake or fraud the agreement failed to express the real intentions of the contracting parties (see Matter of Weinrott [Carp], 32 NY2d 190, 199); he seeks instead to create a wholly new contract.
*297 The case on which appellant relies most heavily to buttress his contention that the issue of a reduction in support payments may be arbitrated is also inapposite. In Swartz v Swartz (49 AD2d 254), involving an extremely broad arbitration clause, the wife permitted her husband’s request for a downward modification of alimony payments to go before the arbitrator and not until an award had been rendered did she contest the arbitrator’s authority. Thus, Swartz’ upholding of the arbitrator’s award reducing the alimony turns largely on the court’s exercise of its narrowly limited powers to review a matter after it has been voluntarily submitted to an arbitrator (see, generally, Matter of Board of Educ. [Hess], 49 NY2d 145, 151-152). Under this standard an award may be set aside only if it is "completely irrational” (Matter of National Cash Register Co. [Wilson], 8 NY2d 377, 383) or in contravention of restrictions on the powers of the arbitrator imposed by the agreement itself (Lentine v Fundaro, 29 NY2d 382, 385).
Clearly, in this case we need not be so rigidly confined because, Ms. Bowmer having moved to stay the arbitration, we are bound to inquire whether the parties have agreed to arbitrate the particular dispute (Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co., 37 NY2d 91, 95; CPLR 7503, subd [b]). We hold that they did not (cf. Matter of Silver v Pilzer, 59 AD2d 680, 681).
Accordingly, the order of the Appellate Division should be affirmed.

. Petitioner asserted that it was no longer economically feasible for him to meet the support obligations in the agreement because his second wife was no longer employéd and because, with all three children in college, the additional payments for educational expenses had grown to $12,000 per year.

. In his demand, Bowmer also sought to direct the sale of the marital abode, reading the agreement as permitting his former spouse to reside there only while the children, then attending college away from home, lived there on a full-time basis. Although Ms. Bowmer unsuccessfully contested the arbitrability of this issue below, it was not appealed to the Appellate Division.

. The separation agreement specifically provided: "If the Husband is of the opinion that he cannot afford to pay for the [college] education of a particular Child, and if the Wife does not agree with his alleged inability to do so, she shall have the right to have the matter arbitrated, pursuant to Article '17’ of this Agreement”.

. Paragraph 17, in fact, seems to have been taken almost verbatim from a sample arbitration clause that appears in Lindey, Separation Agreements and Ante-Nuptial Contracts (Vol 1, Form 29.04).