In the Matter of the Arbitration between ROBERT STIGWOOD ORGANIZATION, LTD., Respondent, and ATLANTIC RECORDING CORPORATION, Appellant.

First Department, October 29, 1981

*Theodore Nussbaum* of counsel *(Raymond Brody* with him on the brief; *Mayer, Nussbaum, Katz & Baker, P.C.,* attorneys), for appellant.

*Jeanne A. Glasser* of counsel *(Martin E. Silfen, P.C.,* attorney), for respondent.

### OPINION OF THE COURT

FEIN, J.

In this proceeding to stay arbitration, petitioner (Stigwood), a British phonograph record manufacturer and distributor, entered a three-year agreement, commencing October 1, 1972, granting respondent (Atlantic) the exclusive right to market in the United States certain master recordings on Stigwood's phonograph record label. Paragraph 18(d) of the agreement provided that upon expiration of the term, Stigwood would have the option in its "sole discretion" to continue marketing any such recordings previously distributed by Atlantic, subject to the payment to Atlantic of 50% of the net royalties.

Among the records exploited by Atlantic pursuant to this agreement was a studio rendition of the musical composition "Jive Talkin'", performed by the popular music group known as The Bee Gees. The manufacture, promotion and distribution of this recording in the United States proved to be financially successful for the parties.

Sometime after the expiration of the agreement, the hit motion picture "Saturday Night Fever" was released, featuring in substantial part the music and recorded performances of The Bee Gees. Among the musical compositions in the motion picture sound track was The Bee Gees' studio rendition of "Jive Talkin'". Stigwood then included this rendition in its release of the original sound track album of the motion picture, an album which was an instant success with the sale of 4,000,000 copies in this country. In accordance with paragraph 18(d) of the now-expired agreement, Stigwood shared its royalties from this album with Atlantic.

Stigwood thereafter released a second sound track album of the motion picture, which was the same as the first sound track album in all pertinent respects except that Stigwood substituted for the studio rendition of "Jive Talkin'" another rendition of the same composition that had been recorded by The Bee Gees during a "live" concert appearance. This second sound track album continued to enjoy the success of its predecessor, with 11,000,000 more copies sold in the United States. However, Stigwood shared none of the royalties from this later release with Atlantic. Atlantic thereupon sought arbitration of its claim to royalties on this second sound track album, *inter alia,* under the agreement. Atlantic appeals from that portion of the judgment at Special Term which permanently stayed the demand for arbitration of this claim on the ground that this dispute was not covered by the arbitration clause in the agreement. Special Term ruled that "the arbitration clause deals with accounting procedures, methods of computation and payments." This is a narrow, but nonetheless viable construction of the limited arbitration provision in paragraph 23(b) of the agreement:

"The provisions subject to arbitration shall be limited to the following:

"Paragraph 4(g); the last sentence of paragraph 7(a); paragraph 13; paragraph 18 and any other provisions of this agreement relating to accounting procedures, methods of computation and payments."

It is clear that paragraph 23(b) limits the disputes subject to arbitration. The issue is whether the limitation is only to disputes concerning "accounting procedures, methods of computation and payments", as held by Special Term.

It is undisputed that three of the provisions made subject to arbitration by paragraph 23(b), to wit, paragraph 4(g), the last sentence of paragraph 7(a) and paragraph 13, are concerned with "accounting procedures, methods of computation and payments". It is notable that each of those provisions indicates it is arbitrable. However, as its caption indicates, paragraph 18, also made subject to arbitration by paragraph 23(b), governs the "continuing rights of parties after expiration". The dispute in issue arises under paragraph 18(d) respecting Atlantic's continuing rights to royalties after expiration of the agreement. It provides: "With respect to the Masters to which Atlantic's exclusive rights have expired, (including without limitation, Canadian rights in the Master recordings described in paragraph 5(b)), Stigwood will administer and exploit such Masters or refrain therefrom in Stigwood's sole discretion, provided however that Stigwood shall pay Atlantic a royalty out of the results and proceeds thereof equal to fifty (50%) percent of net profits therefrom such royalties to be computed and paid by Stigwood in all respects as provided for herein as to royalties payable by Atlantic to Stigwood. In this connection all manufacturing costs and expenses in connection therewith (as permitted by this agreement) including the overhead charge provided for in paragraph 7(b) shall be recovered by Stigwood out of such proceeds. Atlantic shall have no obligation to Stigwood or any third party in connection with such costs and expenses." That subparagraph not only fixes Stigwood's right in its "sole discretion" to "administer and exploit" the records or "refrain therefrom", but also contains "provisions * * * relating to accounting procedures, methods of computation and

payments" upon such exploitation, plainly subject to arbitration pursuant to paragraph 23(b).

It is manifest that the controversy between the parties only incidentally relates to "accounting procedures, methods of computation and payments". In essence the dispute is rather over whether Atlantic has continuing rights to royalties realized from Stigwood's exploitation of the album containing the substituted rendition of The Bee Gees' composition, "Jive Talkin'". The reference in the limited arbitration clause to paragraph 18 may be read as covering only disputes respecting "accounting procedures, methods of computation and payments" or as applicable to all controversies arising under that paragraph including the subject alleged breach of contract. Since the provision is equivocal and subject to either reading, the stay of arbitration was properly granted.

The law is well settled that no party is bound "to arbitrate unless he has clearly consented to do so." *(Matter of Chemoleum Corp. [Continental Grain Co.], 22 AD2d 865.)* The intention to arbitrate "'must be clear and direct'" *(Matter of Marlene Inds. Corp. [Carnac Textiles], 45 NY2d 327, 334; Matter of Riverdale Fabrics Corp. [Tillinghast-Styles Co.], 306 NY 288).* An agreement to arbitrate must be express, direct and unequivocal as to the issues or disputes to be submitted to arbitration. This principle is particularly applicable in the instance of a limited arbitration clause *(Gangel v DeGroot, 41 NY2d 840; Shuffman v Rudd Plastics Fabrics Corp., 64 AD2d 699).*

As stated in *Gangel* (41 NY2d, at p 841): "an arbitration clause must be read conservatively if it is subject to an equivocal reading * * * The agreement to arbitrate must be express, direct, and unequivocal as to the issues or disputes to be submitted to arbitration."

It is undisputed that the clause here involved is a limited arbitration clause. It is equally clear that it is subject to varying reasonable constructions. Manifestly the parties did not intend to have every possible dispute go to arbitration. In the absence of a provision which "expressly and unequivocally encompasses the subject matter of the particular dispute, a party cannot be compelled to * * *

submit to arbitration". *(Bowmer v Bowmer,* 50 NY2d 288, 293-294.)

Accordingly, the judgment, Supreme Court, New York County (KLEIN, J.), entered April 18, 1980 which permanently stayed arbitration with respect to the second claim contained in respondent's demand for arbitration dated October 24, 1979, should be affirmed to the extent appealed from, together with costs.

MURPHY, P. J., MARKEWICH and SILVERMAN, JJ., concur.

Judgment, Supreme Court, New York County, entered on April 18, 1980, unanimously affirmed. Respondent shall recover of appellant $50 costs and disbursements of this appeal.