## (July 21, 1983)

■ 140 BROADWAY COMPANY, Respondent-Appellant, v DEWEY, BALLANTINE, BUSHBY, PALMER & WOOD, Appellant-Respondent. — Judgment of the Supreme Court, New York County (Benjamin Altman, J.), entered on January 21, 1983, which dismissed petitioner's petition for an order compelling arbitration and dismissed respondent's counterclaim, is modified, on the law, without

costs or disbursements, the proceeding deemed to be an action for a declaratory judgment and it is declared that the matter should be submitted to arbitration for the purpose of determining the fair rental value of the premises as of October 1, 1982. On September 28, 1966, petitioner 140 Broadway Company (the Company) and respondent Dewey, Ballantine, Bushby, Palmer & Wood (Dewey) entered into an agreement whereby respondent was to occupy for a 15-year term, expiring on September 30, 1982, certain premises at 140 Broadway in Manhattan. The Company and Dewey are also parties to an agreement which provides respondent with options to renew the lease for two successive five-year periods. To exercise its option for the first renewal, respondent was mandated to notify petitioner in writing not less than 26 nor more than 30 months prior to expiration of the lease. On July 10, 1980, Dewey complied with this notice requirement and the Company and Dewey began negotiations to determine the amount of the rental and other terms applicable to the new lease. Pursuant to paragraph 2 (a) of the agreement: "If the parties have been unable to agree upon the fixed annual rent during the term of the New Lease, such fixed annual rent shall be the then fair annual rental value of the demised premises as determined by arbitration * * * plus such additional rent and charges as are set forth in the Lease, provided, however, that should the fair annual rental value as determined by arbitration as set forth in this subparagraph (a) be less than the sum of the fixed annual rent and additional rent required to be paid for the last year of the term of the Lease, then such determination shall not be the fixed annual rent of the New Lease, but the fixed annual rent during the term of the New Lease shall be the sum of the fixed annual rent and additional rent required to be paid for the last year of the term of the Lease." After the parties had negotiated unsuccessfully for more than a year, Dewey advised the Company that it would seek arbitration. On October 5, 1982, Dewey formally requested arbitration, stating that the matter to be decided under paragraph 2 (a) was the fair annual rental value of the premises as of July 10, 1980, the date on which Dewey exercised its option. The Company served its own notice of intention to arbitrate on October 8, 1982 but perceived the crucial issue to be the fair annual rental as of October 1, 1982, the commencement of the new lease. Petitioner subsequently instituted the instant proceeding seeking an order compelling arbitration in accordance with its demand and staying the arbitration noticed by Dewey. Respondent counterclaimed for an order directing that the arbitration be conducted pursuant to its interpretation of the disputed question. Special Term, however, dismissed both the petition and the counterclaim, concluding that under the agreement, the arbitrator must ascertain the fair market value and the term of the new lease. We disagree. The arbitration clause involved here is narrowly circumscribed and only permits the arbitrators to determine the fair rental value of the subject premises. Presumably such a function is to be performed by persons possessing the requisite expertise in the area and who, after examining the relevant testimonial and documentary evidence, will make an appropriate finding. Not only does the agreement lack any indication that the arbitrators were authorized to consider any issue other than the one pertaining to the fair rental value, but the parties themselves have chosen the court as the most competent forum to resolve the dispute between them. (See *Teplitsky v Douglaston Golf Practice Range,* 64 AD2d 578.) Moreover, "unless the agreement to arbitrate expressly and unequivocally encompasses the subject matter of the particular dispute, a party cannot be compelled to forego the right to seek judicial relief and instead submit to arbitration" (*Bowmer v Bowmer,* 50 NY2d 288, 293-294). Since a reasonable construction of the agreement, as well as the conduct of the parties in submitting the controversy to the court for resolution, requires a judicial determination here, the matter will be treated as an action

for a declaratory judgment. In that regard, the most logical construction of the agreement is that it contemplates that the operative fair rental value of the premises is the one applying on October 1, 1982, the date of the commencement of the new lease. If one of the parties had, in fact, demanded arbitration prior to October 1, 1982, the arbitrators would certainly not have had to await the start of the new lease term but would have been warranted in proceeding to ascertain the anticipated fair rental value on the date that the lease was to commence. However, now that the relevant date has long passed, it is appropriate for the arbitrators to decide the fair market value as it existed on October 1, 1982. To expect or require expert arbitrators to engage in mental gymnastics by transporting their analysis back to a date in the past, to determine the fair market value from that viewpoint for a date which has already passed, is an unrealistic and unnecessary exercise. Since the parties desire to ascertain the fair market value on a given date, it would be unreasonable to expect arbitrators to ignore the actual market value on that date. Concur — Murphy, P. J., Bloom and Milonas, JJ.

Sandler and Alexander, JJ., concur in part and dissent in part in a memorandum by Alexander, J., as follows: I agree that the determination below dismissing the petition should be reversed and the proceeding converted to an action to declare the rights of the parties as to the fixing of the rental for the new lease. I disagree, however, that the new rent should be determined by the arbitrators on the basis of the *actual* fair market rent found to in fact exist on October 1, 1982, the date of the commencement of the term of the new lease. Rather, it seems clear that the provisions of the agreement require the arbitrators to consider and determine *prospectively*, from the perspective of the period during which the landlord and tenant would be negotiating the terms of the new lease (during the 60 days following the exercise by the tenant of the option) what a willing landlord would charge and what a willing tenant would pay for the space in question as of October 1, 1982. The renewal option in the agreement of September 28, 1966 confers upon the tenant, Dewey, the right to negotiate an extension of the lease for an additional five-year period upon giving notice of not more than 30 months (March, 1980), nor less than 26 months (July, 1980), prior to the expiration of the 15-year lease executed the same day. The extended lease was to commence upon the "expiration of the term of the lease (September 30, 1982) and expiring 5 years thereafter". The agreement contemplates the parties negotiating and agreeing upon the terms and conditions of the new lease within 60 days of Dewey's exercise of the option, but if they are unable to so agree, then the new lease "shall be upon the same terms, covenants and conditions as are contained in the lease" except as to the "fixed annual rent". The agreement provides, in that event, that "such fixed annual rent shall be the then fair annual rental value of the demised premises as determined by arbitration * * * *provided however, that should the fair annual rental value as determined by arbitration * * * be less than the sum of the fixed annual rent and additional rent required to be paid for the last year of the term of the lease, then such determination shall not be the fixed annual rent of the New Lease, but the fixed annual rent during the term of the New Lease shall be the sum of the fixed annual rent required to be paid for the last year of the term of the lease."* (Emphasis added.) If, as the plaintiff argues and the majority holds, the arbitrators are to await the commencement of the new term to determine the "fair annual rental" of the demised premises, there would be little or no possibility that the rent thus fixed would be less than the "fixed annual rent * * * to be paid for the last year of the term of the lease", and the italicized provisions quoted above would be mere surplusage. Moreover, it seems unreasonable to expect that a situation where neither party would or could know what the new rent for the renewed term would be until the new

term actually began, would be an acceptable proposition to either the landlord or the tenant. Since the agreement contemplated a 60-day period of negotiations between the parties before arbitration was to be demanded, it is reasonable to believe that the parties intended that arbitrators would place themselves in the position of the parties and use the same data that had been available to the parties themselves, viz., prospective projections based on information as to market conditions during that 60-day period. The fact that the parties continued to negotiate beyond the 60 days and the fact that Dewey did not serve its demand for arbitration until after October 1, 1982, does not alter the result or the obligation to comply with the language of the agreement. This is particularly so since there is an option for a further five-year extension of the lease in the September, 1966 agreement, and the issue of fixing the new rent through arbitration may well recur.