MARIA F. EGOL, Respondent, v DAVID EGOL, Appellant.

First Department, June 17, 1986

---

### APPEARANCES OF COUNSEL

*John A. Vassallo* of counsel *(Richard A. Abrams* with him on the brief; *Franklin, Weinrib, Rudell & Vassallo, P. C.,* attorneys), for appellant.

*Martin L. Conrad* of counsel *(Herbert L. Finkelstein* with him on the brief; *Jaffin, Schneider & Conrad,* attorneys), for respondent.

### OPINION OF THE COURT

FEIN, J.

After nearly 10 years of marriage, which produced two children, the parties were divorced in February 1984. Defendant was a corporate officer at the time, receiving an annual salary of $500,000. The divorce judgment incorporated a property settlement agreement, entered into in December 1983, which included a provision for maintenance and child support in the amount of $115,000 per year, plus an additional $30,000 for medical, educational and summer camp expenses. The agreement further provided, in paragraph 5 (e): "Should the Husband suffer a substantial, adverse and involuntarily *[sic]* change in his financial circumstances, making his support obligations under this Agreement inequitable or a substantial hardship for him, the parties shall negotiate a modification of his obligations, consistent with their then financial circumstances. On a failure of the parties to agree upon such a modification, either party may submit such dispute to arbitration in New York City, in accordance with the Rules of the American Arbitration Association, and judgment upon any award rendered in such arbitration may be entered in any court of competent jurisdiction."

In late January 1984, before the settled divorce judgment was entered, defendant lost his job. He was able to secure other employment in May, but at half the salary he had been earning.

Defendant had begun payment of the full monthly support

and maintenance ($9,583.33) called for in the agreement. However, on February 15, 1984, defendant's attorney wrote to plaintiff's attorney that as of March 1 defendant would be unable to make future agreed-upon payments because of his change in employment status. Instead, commencing in March 1984 defendant began paying plaintiff $2,500 per month, which was accepted by plaintiff without prejudice. In correspondence and meetings, the parties' attorneys agreed to refrain from instituting arbitration at that time. When defendant obtained employment in May at an annual salary of $250,000, he unilaterally increased his monthly payment to $3,000.

These payments still amounted to less than one third of the original agreed-upon amount, which had been based on an annual salary of $500,000. In October 1984, when defendant's payments had fallen more than $54,000 short of the amount provided for in the agreement, plaintiff commenced suit for these arrears. Defendant cross-moved, pursuant to CPLR 7503 (a), to compel arbitration, in accordance with paragraph 5 (e) of their agreement, explaining that his delay in seeking such relief was due to the understanding between the parties that the fixing of the amount of payments was to be held in abeyance pending resolution of defendant's employment situation, including litigation between him and his former employer. Plaintiff's interpretation of the agreement was that arbitration, which had not yet been instituted, would be available only for a prospective modification of payments, not for cancellation or reduction of arrears.

Special Term interpreted the provision for arbitration in paragraph 5 (e) as permissive, rather than compulsory, and ruled that defendant had waived his right to arbitration by failing to notice the dispute for such resolution. Special Term denied defendant's application to compel arbitration and granted plaintiff judgment for eight months' arrears (Mar.-Oct. 1984), totaling $54,166.64.

Within one week, before Special Term's order was settled, defendant served a demand for arbitration, under CPLR 7503 (c), and moved to reargue the prior decision. Plaintiff moved for an additional money judgment and to stay arbitration. The court adhered to its prior decision; granted plaintiff's motion to stay arbitration under CPLR 7503 (b), invalidating defendant's demand on the ground that it lacked the compulsory preclusion notice required by CPLR 7503 (c); and granted

plaintiff an additional money judgment covering four more months of arrears (Nov. 1984-Feb. 1985), totaling $29,333.32.

Defendant appeals both orders.

Two procedural questions are raised as to defendant's attempt to arbitrate this dispute. First, was the agreement to arbitrate compulsory or merely permissive? Second, did defendant's omission of the preclusion notice in his demand for arbitration render that demand invalid on its face?

It is conceded that the arbitration clause provides a vehicle for resolving any dispute respecting downward modification of the agreed-upon support obligation based on a change in financial circumstances of the husband. The parties had plainly agreed, in paragraph 5 (e), to submit any disputes in connection with a hardship modification to arbitration. However, plaintiff argues and the dissent agrees that until arbitration is commenced, unmodified arrears become a fixed obligation ripe for enforcement at law.

In our view, Special Term and the dissent err in describing the provision for arbitration as permissive rather than compulsory. The only permissive aspect of the agreement is that which affords either party the opportunity to initiate arbitration. When plaintiff initiated litigation, defendant appropriately cross-moved to compel arbitration (see, McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C7503:1, p 356). At no point did defendant flatly refuse to continue making payments (cf. Matter of Schauer v Schauer, 91 AD2d 697). Rather, defendant informed plaintiff of his altered financial circumstances, and the parties agreed to try to negotiate their differences before resorting to the method they had established for dispute resolution.

Defendant urges that the question of arrears, albeit brought on by a unilateral modification, is an arbitrable dispute. He contends there was a meeting of the minds between the parties to avoid arbitration in the hope of resolving this matter through negotiation. He urges that a breakdown in the negotiations should entitle either party to invoke arbitration, a remedy they had not eschewed, but had merely held in abeyance. However, defendant unilaterally reduced his payments by more than two thirds, and declined further negotiations. He only invoked arbitration when forced to do so. Defendant could have sought arbitration at any time. Instead he waited eight months until his first application by cross motion, on November 1, 1984. Plaintiff also could have in-

voked arbitration during this period, although it would seem anomalous that she should seek arbitration to bring about a reduction in the agreed-upon amount. Moreover, she was deterred by defendant's alleged desire to negotiate and avoid arbitration! After eight months, plaintiff invoked judicial intervention rather than arbitration.

The question is whether she had a right to do so in the face of the provision in the arbitration clause of the agreement: "On a failure of the parties to agree upon such a modification, either party may submit such dispute to arbitration". Plainly arbitration was intended to be the procedure for resolution of the issue as to whether a modification of the husband's obligations was warranted by an adverse change in his financial circumstances, making his support obligations inequitable and a substantial hardship. Did the clause intend that the wife demand arbitration if the husband failed to make the payments required under the agreement because of an alleged change in his financial circumstances?

Such a reading of the agreement would, in effect, put the burden on the wife to agree in advance that there must be a modification, as urged by the husband. The intention would appear to be to impose the burden of instituting arbitration upon the husband since it is he who seeks the reduction upon the alleged ground of reduced circumstances.

There is surface merit to plaintiff's contention, adopted by the dissent, that until arbitration to modify is commenced, the unmodified arrears become a fixed obligation enforceable by the courts regardless of the arbitration agreement. However, nothing in the agreement supports this conclusion.

The implication from plaintiff's attorney's letters that plaintiff would refrain from instituting such action until defendant's claim against his former employer was settled does not lead to the conclusion, as defendant contends, that plaintiff was waiving any rights. It is clear that plaintiff's delay was premised upon the expectation that defendant would be forthcoming with payments to make up the deficiencies upon settlement of his lawsuit.

However, this involves what are basically substantive determinations as to the meaning and purport of the arbitration agreement and the communications between the parties and their attorneys. These are matters for the arbitrator.

The dissent suggests that this permits defendant "to evade his responsibility for $54,000 in arrears for maintenance and

support payments". This is an unwarranted conclusion. The extent of defendant's liability for such arrears is for the arbitrator.

The function of the courts is to determine whether there was an agreement to arbitrate the dispute in issue and whether any conditions precedent to arbitration have been met *(Bowmer v Bowmer,* 50 NY2d 288; *Stillman v Stillman,* 80 AD2d 356). The contention of the wife that *Matter of Schauer v Schauer (supra)* precludes terminating arrearages for periods prior to her application to the court under Domestic Relations Law § 236 (A) (1) is a matter for the arbitrator, as is the issue of whether the failure of the wife to seek arbitration would constitute for defendant the "good cause" to bar application of that statute.

It is apparently undisputed that defendant husband's financial circumstances have been seriously affected by (1) loss of his job, (2) his substantially lower salary at his new job, and (3) his settlement of the lawsuit with his prior employer. These factors are properly to be considered by the arbitrator in determining whether a reduction is warranted and to what extent. Similar is the issue as to whether the self-initiated reduction by the husband and his delay in seeking arbitration require that he pay arrears.

Our case is unlike *Bowmer v Bowmer (supra),* relied upon by the dissent. There a broad arbitration clause was held not to encompass authority to reduce payments because of changed circumstances, precisely for the reason that the arbitration clause did not refer to such contingency. However, the language of the arbitration clause here in issue relates specifically to downward modification. This is not a case where the arbitrator is asked to reform the instrument. The arbitrator is called upon only to interpret it. The subject matter is plainly covered by the language of the agreement. This is all that *Gangel v DeGroot* (41 NY2d 840), cited by the dissent, holds. It is the function of the arbitrator to resolve questions of interpretation of the contract once it is determined that the arbitration clause is, by its terms, applicable to the dispute in issue *(Pearl St. Dev. Corp. v Conduit & Found. Corp.,* 41 NY2d 167), unless the issue is one of compliance with express conditions precedent to arbitration.

Although it is argued by the wife that the express condition requiring prior negotiation was not complied with by the husband, this is hardly the type of condition precedent requir-

ing court determination prior to arbitration. Any issue as to the validity of the substantive provisions of the contract is for the arbitrator *(Matter of Cassone,* 63 NY2d 756; *Matter of Weinrott [Carp],* 32 NY2d 190, 198). The grounds urged for disregarding the agreement to arbitrate involve matters post-dating the existence of what is clearly a valid agreement. Hence, they do not affect arbitrability *(Matter of Cassone, supra).* There is nothing in this agreement, or in the alleged agreement between the attorneys to delay arbitration, which indicates that the question of arrears is not a matter for the arbitrator *(Matter of Schlaifer v Sedlow,* 51 NY2d 181; *Matter of Cassone, supra).* The delay of the husband in moving to compel arbitration is not a bar to a determination of all of the issues, including arrears, by the arbitrator *(Avery v Avery,* 81 AD2d 849, 851; *see, Bowmer v Bowmer, supra).*

Contrary to the implication in the dissent, there is nothing in the agreement which precludes the arbitrator from determining the appropriate amount of arrears.

The CPLR 7503 (c) demand for arbitration did not come until February 12, 1985, long after defendant's initial 7503 (a) invocation of arbitration was erroneously rejected. It is thus unnecessary for us to reach the question of failure to include a preclusion notice in the demand for arbitration. Moreover, omission of such a notice merely renders open-ended the period within which a party served has to seek a stay of arbitration. Such omission precludes the party seeking arbitration from relying upon the time limitation on seeking a stay. The demand for arbitration is not thereby rendered ineffective *(see, Matter of Dunay v Weisglass,* 78 AD2d 444, 446, *revd on other grounds* 54 NY2d 25).

Accordingly, the order of Supreme Court, New York County (Stanley S. Ostrau, J.), entered March 6, 1985, granting plaintiff a money judgment in the amount of $54,166.64, and denying defendant's cross motion, should be reversed, on the law, the judgment in favor of plaintiff should be vacated and the cross motion of defendant to compel arbitration should be granted, without costs.

The order of the same court and Justice, entered May 22, 1985 granting plaintiff a money judgment in the amount of $29,333.32, plus counsel fees and a stay of arbitration while denying the cross motion to compel arbitration, should be modified, on the law, only to the extent of vacating the money judgment, denying plaintiff's motion for a stay of arbitration

and granting defendant's cross motion to compel arbitration and, as so modified, otherwise affirmed, without costs.

ELLERIN, J. (dissenting in part). Should defendant be permitted to evade his responsibility for $54,000 in arrears for maintenance and support payments, by being allowed, after the fact, to take refuge in a permissive arbitration clause which was available to him from the outset but recourse to which he eschewed for his own purposes?

The facts, which are set forth in greater detail in the majority opinion, are quite simple and essentially uncontradicted. In December 1983, the parties entered into an agreement (incorporated in the divorce judgment) requiring the husband to pay $9,583 monthly for maintenance and child support. The agreement also provided that in the event of a substantial adverse change in the husband's financial circumstances the parties "shall negotiate a modification of his obligations" and on a failure to agree upon such modification either party "may submit such dispute to arbitration".

In March 1984, after the defendant lost his job, he unilaterally reduced the amount of his maintenance and child support payments to $2,500 monthly. Counsel for the parties were attempting to negotiate an appropriate modification at this time and the defendant husband urged deferral of arbitration for reasons allegedly related to a pending controversy and litigation with his prior employer. In May 1984, after defendant had obtained new employment at an annul salary of $250,000, he increased his monthly maintenance and support payment to the sum of $3,000 per month ($36,000 per year) still less than a third of the amount he had agreed to in December. Defendant continued to defer recourse to arbitration for reasons of the still pending controversy with his prior employer which was settled in September 1984.

In October 1984, when arrears for maintenance and child support under the original agreement had reached some $54,000, plaintiff instituted the instant action. It was then, and only then, that defendant cross-moved to compel arbitration.

The majority concludes that once the errant defendant cross-moved for arbitration, the court was ousted from jurisdiction and all issues, including his prior violations of the agreement, are to be submitted to arbitration. I cannot agree that such conclusion is warranted under the terms of the agreement, and I believe that, in so holding, the majority is in

effect rewriting the agreement and permitting defendant to evade his obligations by manipulating the arbitration procedure.

The agreement itself expressly specifies the manner in which a substantial adverse change in the husband's financial circumstances is to be handled. It states that "the parties shall negotiate a modification of his obligations, consistent with their then financial circumstances", and further states that "[o]n a failure of the parties to agree upon such a modification, either party *may* submit such dispute to arbitration". (Emphasis added.) The agreement does *not* say that during negotiations or prior to arbitration the husband may, as was here done, unilaterally reduce his monthly payments. On the contrary, the language clearly indicates the only two means by which such reduction may be affected and implicit in the language of the provision is the requirement that the originally agreed upon amount be continued until a reduction be effected by either of these means. Significantly, the agreement makes negotiation by the parties a condition precedent to resort to arbitration but it nowhere makes arbitration mandatory or indicates that the question of reduction prior to arbitration be submitted to that forum.

As was stated in *Bowmer v Bowmer* (50 NY2d 288, 293-294), where a far broader arbitration clause was involved, "the rule is clear that unless the agreement to arbitrate expressly and unequivocally encompasses the subject matter of the particular dispute, a party cannot be compelled to forego the right to seek judicial relief and instead submit to arbitration (see *Gangel v DeGroot,* 41 NY2d 840, 841)." In *Bowmer,* it is *further* stated (at p 296) that notwithstanding the wide discretion that an arbitrator has once the controversy is properly before him, "the power to formulate flexible solutions cannot be used as a bootstrap for an unpredictable expansion of the parameters of arbitral authority". By relegating the issue of arrears to the arbitrator in this case, the majority is "unpredictably" expanding the parameters of the arbitrator's authority and submitting a dispute which the parties themselves did not agree was subject to arbitration. "The agreement to arbitrate must be express, direct, and unequivocal as to the issues of disputes to be submitted to arbitration." *(Gangel v DeGroot, supra,* p 841.) Here the issue of arrears is nowhere made subject to the arbitration procedure which "may" be invoked by either party in the event they fail to agree upon the issue of reduction.

The majority here recognizes that the intention of the agreement "would appear to be to impose the burden of instituting arbitration upon the husband since it is he who seeks the reduction upon the alleged ground of reduced circumstances." Yet, they are now permitting him to evade his responsibility for arrears by allowing him to take advantage of his own delay in bringing on the arbitration procedure and are, in effect, rewarding him by rewriting the parties' agreement to extend arbitration to the issue of arrears contrary to the express language of that agreement. In my view, this does violence to the purpose and intent of the arbitration clause involved by permitting it to be inequitably and inappropriately manipulated.

Accordingly, I find that the issue of prior arrears, up to the date that arbitration was first invoked, was properly before the court and I would affirm the order entered on March 6, 1985 to the extent that it grants plaintiff a money judgment in the sum of $54,166.64. I agree with the majority that once arbitration was invoked, the issue of the reduction of defendant's payments was properly before the arbitrator, but only prospectively from the initial date that arbitration was sought.

SANDLER, J. P., and MILONAS, J., concur with FEIN, J.; ROSENBERGER and ELLERIN, JJ., dissent in part in an opinion by ELLERIN, J.

Order, Supreme Court, New York County, entered on March 6, 1985, reversed, on the law, the judgment in favor of the plaintiff vacated and the cross motion of the defendant to compel arbitration granted, without costs and without disbursements, and it is further ordered that the order of said court, entered on May 22, 1985 is modified, on the law, only to the extent of vacating the money judgment, denying plaintiff's motion for a stay of arbitration and granting defendant's cross motion to compel arbitration and, as so modified, otherwise affirmed, without costs and without disbursements.