Penny WILLIAMS, Appellee,

v.

**SHEARSON LEHMAN BROTHERS, INC., Appellant,**

**and**

**Bank of Oklahoma, N.A., Defendant.**

No. 83348.

Court of Appeals of Oklahoma,
Division No. 3.

Dec. 12, 1995.

Rehearings Denied March 1, 1996.

Certiorari Denied May 30, 1996.

Frank H. McCarthy and Eric E. Packel, Barkley, Rodolf & McCarthy, Tulsa, for Appellant.

K. Clark Phipps, Galen L. Brittingham, and Kirsten E. Pace, Atkinson, Haskins, Nellis, Boudreaux, Holeman, Phipps & Brittingham, Tulsa, for Appellee.

## OPINION

ADAMS, Judge:

Appellee Penny Williams opened an account with Shearson Lehman Brothers, Inc. in September of 1989. Her financial consultant with Shearson, Jerry Wood, reportedly wrote checks to himself on Williams' account

and those of some twenty-three other clients in an aggregate sum of 1.2 to 1.4 million dollars. Claiming she was damaged as a result of Wood's actions, Williams sued Wood, Shearson and Bank of Oklahoma.[1] Her claim against Shearson was based on common law fraud and breach of contract theories as well as violations of state and federal securities laws.

Shearson moved to compel arbitration of Williams' claims, arguing the agreement Williams signed setting up her account provided for arbitration of all disputes arising out of the handling of her account. Shearson also argued the law of New York governed this action according to the agreement. The trial court denied Shearson's motion. As the principal basis for its decision, the trial court concluded that the Oklahoma Arbitration Act, 15 O.S.1991 § 801 *et seq.* (the Act), violated Article 23, § 8 of the Oklahoma Constitution. In addition, the trial court apparently concluded Williams had demonstrated that the agreement did not compel arbitration for claims arising under federal securities laws. The trial court did not specifically address the "choice of law" issue in its order.

Shearson appeals the order denying its motion to compel arbitration.[2] For reversal, Shearson argues that arbitration is constitutional, that New York law governs this controversy and that all of Williams' claims are subject to arbitration. Alternatively, Shearson argues that even if Williams' claims under federal securities laws are not subject to arbitration, the claims based on common law fraud, breach of contract and state securities laws are subject to arbitration.

### Constitutionality

According to Article 23, Section 8 of the Oklahoma Constitution, "[a]ny provision of a contract, express or implied, made by any person, by which any of the benefits of this Constitution is sought to be waived, shall be

null and void." The trial court apparently concluded that the Act violated this provision because it allows parties to agree to waive a constitutional right to have courts decide any controversies which might arise in the future.[3]

■ In addressing Shearson's challenge to the trial court's conclusion, we must recognize the existence of a strong presumption that the Legislature intended its laws to be constitutional. Legislative acts should be upheld unless it is demonstrated those acts are "clearly, palpably and plainly inconsistent with the Constitution" and are prohibited, not whether the acts are authorized. *Reherman v. Oklahoma Water Resources Board,* 679 P.2d 1296 (Okla.1984).

■ Although this issue has never been squarely addressed in a majority opinion of the Oklahoma Supreme Court, it has been at the periphery in several cases and was the subject of substantial examination in concurring and dissenting opinions in those cases. A proper understanding of those cases is essential to the proper resolution of the issue before us in this case.

In *Long v. DeGeer,* 753 P.2d 1327, 1328 (Okla.1987), the Court mandated arbitration under a contract similar to the one presented in this case and rejected the argument that enforcement of the arbitration agreement would be contrary to "public policy," noting that "courts generally look with favor upon arbitration agreements as a shortcut to substantial justice with a minimum of court interference." In his concurring opinion, Justice Opala noted the potential conflict between enforcing Long's promise to arbitrate and therefore waive her right to jury trial and Article 23, § 8. However, because Long did not challenge the validity of the "choice of law" clause in the contract, which provided for New York law to govern, he conclud-

---

1. Williams' claim against Wood was subsequently dismissed without prejudice. Her claim against Bank of Oklahoma, which was apparently based on its acceptance of forged endorsements by Wood on checks made payable to Shearson clients, including Williams, is not involved in this appeal.

2. The denial of an application to compel arbitration is an interlocutory order appealable by right under 15 O.S.1991 § 817(A)(1).

3. The trial court made no specific statements concerning its reasons. However, this is the basis argued by Williams in the trial court and on appeal.

ed Article 23, § 8 could not be applied to prevent arbitration of Long's claim.

In *Dean Witter Reynolds, Inc. v. Shear*, 796 P.2d 296 (Okla.1990), the Court again affirmed a trial court order mandating arbitration and was not required to address the potential conflict with Article 23, § 8 because the customer did not challenge a "choice of law" provision which provided for New York law to govern. In her specially concurring opinion, Justice Kauger outlined her reasons for concluding that Shear's agreement to arbitrate could be enforced without violating Article 23, § 8, even if Oklahoma law applied. According to Justice Kauger, interpreting Article 23, § 8 as a ban on enforcing agreements to arbitrate future disputes is inconsistent with other provisions of the Oklahoma Constitution which contemplate the use of arbitration.[4]

The debate continued in *Raines v. Independent School District No. 6 of Craig County*, 796 P.2d 303 (Okla.1990), which was decided the same day as *Shear*. In *Raines*, the majority reversed a trial court order mandating arbitration of a grievance concerning teacher discipline under a collective bargaining agreement. The majority did not address the application of Article 23, § 8, but held that a school board's authority to discipline a teacher is nondelegable and could not be subjected to mandatory arbitration under a collective bargaining agreement. Justice Kauger dissented, and as part of her dissenting opinion restated her view that interpreting Article 23, § 8 as a ban on arbitration of future disputes was inconsistent with other provisions of the Oklahoma Constitution. In his concurring opinion, Justice Opala further explained his view that Article 23, § 8 "makes legally unenforceable promises to relinquish the benefit of conducting *litigation in ordinary courts* for resolution of differences that may arise in the course of the parties' contractual dealings." *Raines*, 796

P.2d at 306 (Opala, J., concurring) (emphasis in original).

According to this view, Article 23, § 8 prevents enforcement only of a *"promise to surrender a state constitutional benefit that may become one's due in the course of the parties' contractual dealings."* The constitutional benefit which this view perceives to be surrendered by an agreement to arbitrate future disputes is "reasonably unimpeded access to court for dispute resolution in accordance with the ordinary course of law." Other provisions of the Oklahoma Constitution contemplating arbitrations are not inconsistent with this view, according to Justice Opala, either because they merely *"afford dispute resolution as a method of dispute resolution for those who may desire it "* or, in the case of the Article 9, § 42, they do *"not bar either the corporation or the affected employees from resort to courts for the vindication of their rights."* 796 P.2d at 305, 306 (Opala, J., concurring) (emphasis in original).

Most recently, in *Cannon v. Lane*, 867 P.2d 1235 (Okla.1993), the Court prohibited enforcement of an arbitration agreement in a health maintenance contract. In so doing, the Court held the health maintenance contract was a "contract with reference to insurance" and was explicitly excluded from application of the Act. Since the Act did not apply, extant Oklahoma law voided the agreement to arbitrate. The Court did not address the application of Article 23, § 8, but Justice Opala reiterated his view that *"all contracts* which call for submission of future controversies to arbitration are violative of Art. 23, § 8 and hence unenforceable." *Cannon*, 867 P.2d at 1241 (Opala, J., concurring) (emphasis in original).

In the absence of any binding authority, we must agree that interpreting Article 23, § 8 as a ban on all contractual agreements to submit future disputes to arbitration is incon-

---

4. Article 5, § 46 prohibits the Legislature from passing any local or special law which regulates the "practice or jurisdiction of, or chang[es] the rules of evidence in judicial proceedings or inquiry before courts, justices of the peace, sheriffs, commissioners, *arbitrators*, or other tribunals." (Emphasis added). Article 6, § 21 requires the Legislature to create a "Board of *Arbitration* and Conciliation in the Department of Labor." (Emphasis added). Article 9, § 42 requires every mining and public service corporation to stipulate that *"such corporation will submit any difference it may have with employees in reference to labor, to arbitration, as shall be provided by law"* as a condition of receiving a license or charter. (Emphasis added).

sistent with the principle requiring us to interpret constitutional provisions so as to give effect to each. Article 9, § 42 clearly contemplates requiring mining and public service corporations to submit future labor disputes to arbitration. If, as suggested in the concurring opinion in *Raines*, submission to arbitration is purely voluntary and the corporations covered by Article 9, § 42 may avoid arbitration and go directly to court as they see fit, the "stipulation" required by that provision as a condition of receiving a license or charter is a vain act. We will not adopt an interpretation of Article 23, § 8 which renders another provision of the same constitution useless.

Moreover, enforcement of an arbitration agreement under the procedures outlined in the Act does not unreasonably impede the parties' access to the courts. The Act guarantees court review of arbitration orders and allows parties to apply to the court for vacation, modification and correction of arbitration awards. 15 O.S. 1991 §§ 812, 813, 815. Awards may be confirmed and docketed in the court. 15 O.S.1991 §§ 811, 814. Clearly, the courts of this State, upon application or petition for review, are open and accessible to the parties to arbitration. We hold that enforcement of agreements to arbitrate future disputes under the procedures provided by the Act does not violate Article 23, § 8. The trial court's decision concluding otherwise was erroneous.

### Application of New York Law

■ The general rule is that a contract will be governed by the laws of the state where the contract was entered into unless otherwise agreed and unless contrary to the law or public policy of the state where enforcement of the contract is sought. *Telex Corporation v. Hamilton,* 576 P.2d 767 (Okla. 1978). The agreement between Williams and Shearson provides that it "shall be governed by the laws of the State of New York."

Williams argues that absent this provision, Oklahoma law would apply because the parties, excepting Shearson's home office, are in Oklahoma, all transactions occurred or originated in Oklahoma, and the contract was entered into in Oklahoma. Williams claims that because arbitration is against public policy in Oklahoma, Oklahoma has a materially greater interest than New York in the determination of this controversy.

■ However, we do not apply the test for which state has a materially greater interest until it has been determined that no effective contractual choice of law has taken place. Only if there is a failure of an effective choice do we consider the factors in Restatement (Second) Conflict of Laws § 188. *See Shear,* 796 P.2d at 299; and *Pate v. MFA Mutual Insurance Company,* 649 P.2d 809 (Okla. App.1982).

■ Parties are free to specify by contract the rules under which arbitration will be conducted, including the specification of the law of a particular jurisdiction. *See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Nothing in this record demonstrates that the parties' contractual choice of law should not be given effect as written. Having concluded that enforcement of this agreement to arbitrate under the procedures outlined in the Act would not violate our constitution and is therefore not against public policy, we must conclude that New York law governs this controversy.[5]

### Arbitrable Claims

Paragraph 13 of the Customer's Agreement signed by Williams states, in pertinent part:

Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions

---

5. Although the record before the trial court is equivocal about whether the parties asserted that the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.,* pre-empts Oklahoma and New York law because the transaction herein was within interstate commerce, the issue is not raised on appeal nor does Shearson make any specific references to that Act in its brief. Accordingly, we do not address the issue of the pre-emptive effect of the Federal Arbitration Act or its application to the issues on appeal, and we confine our analysis to New York law. *Peters v. Golden Oil Co.,* 600 P.2d 330 (Okla.1979).

with you for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc. as I may elect.... *This agreement to arbitrate does not apply to any controversy with a public customer for which a remedy may exist pursuant to an expressed or implied right of action under certain of the federal securities laws.* (Emphasis added).

The only significant issue with regard to which of her claims Williams agreed to arbitrate involves the determination of the effect of the emphasized language.[6] Clearly, this provision does not exempt from arbitration any claims which are *not* premised on expressed or implied rights of action under "certain of the federal securities laws." Therefore, any claim made by Williams which is premised on some basis *other* than federal securities laws is arbitrable under this agreement. For example, Williams claims Shearson breached fiduciary duties owed to her. In *Barbi v. W.E. Hutton & Co.,* 53 A.D.2d 562, 384 N.Y.S.2d 828 (App.Div. 1 Dept.1976), the New York court, faced with allegations of breach of fiduciary duty, enforced the arbitration agreement between the parties as to state-law based claims even though the arbitration agreement appeared to exempt securities-based claims. While Williams' state-law based claims are subject to arbitration under New York law, the proper treatment of her federal securities-based claims is less clear.

Shearson argues the emphasized language is merely the notice required by Rule 15c2–2, 17 C.F.R. 240.15c2–2, of the Securities and Exchange Commission, which prohibited pre-dispute arbitration agreements, and not a substantive provision of the customer agreement. *See, e.g., Scher v. Bear Stearns & Co., Inc.,* 723 F.Supp. 211 (S.D.N.Y.1989). Williams argues that she was entitled to interpret the sentence as exempting her feder-

al securities claims from arbitration. We agree with Williams.

■ The existence of a valid arbitration agreement is governed by N.Y.Prac.L. & R. § 7501 (McKinney 1980), which requires only that the agreement to arbitrate be in writing. If such a writing exists, the next task is to determine if the parties actually agreed upon it. *Crawford v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 35 N.Y.2d 291, 361 N.Y.S.2d 140, 319 N.E.2d 408 (1974). As stated in *Gangel v. DeGroot,* 41 N.Y.2d 840, 841, 393 N.Y.S.2d 698, 699, 362 N.E.2d 249, 250 (1977), "an arbitration clause must be read conservatively if it is subject to an equivocal reading ... The agreement to arbitrate must be express, direct and unequivocal as to the issues or disputes to be submitted to arbitration." Unless an arbitration agreement expressly and unequivocally encompasses the subject matter of the particular dispute, a party cannot be compelled to forego the right to seek judicial relief and instead submit to arbitration. *Bowmer v. Bowmer,* 50 N.Y.2d 288, 428 N.Y.S.2d 902, 406 N.E.2d 760 (1980).

Although it is fundamental that any contract that is unambiguous on its face is presumed to reflect the parties' intent, and the thrust of contract interpretation is to give effect to the expressed intent of the parties, *See generally, Breed v. Insurance Company of North America,* 46 N.Y.2d 351, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978), when a contract is ambiguous, a rush to arbitration is inappropriate. New York both favors and encourages arbitration as a means of conserving the time and resources of the courts and of the contracting parties. *Nationwide General Insurance Company v. Investors Insurance Company of America,* 37 N.Y.2d 91, 371 N.Y.S.2d 463, 332 N.E.2d 333 (1975); *See Maye v. Bluestein,* 40 N.Y.2d 113, 386 N.Y.S.2d 69, 351 N.E.2d 717 (1976). However, the parties are entitled, before all else, to a judicial determination whether there was a valid agreement to arbitrate. *Rockland County v. Primiano Construction Co., Inc.,* 51 N.Y.2d 1, 431 N.Y.S.2d 478, 409 N.E.2d

---

6. Our conclusions concerning the application of Article 23, § 8 must result in rejecting Williams' argument that none of her claims are subject to arbitration because the agreement was "unenforceable due to federal or state law."

951 (1980). If a court determines that the parties had not agreed to arbitrate their disputes, the matter is concluded and a stay of arbitration should be granted or the application to compel arbitration denied. *See Schubtex, Inc. v. Allen Snyder, Incorporated,* 49 N.Y.2d 1, 424 N.Y.S.2d 133, 399 N.E.2d 1154 (1979).

As with other contracts, the meaning of an arbitration agreement is to be determined from the language employed. *Cowen & Company v. Anderson,* 76 N.Y.2d 318, 559 N.Y.S.2d 225, 558 N.E.2d 27 (1990). A contract is ambiguous if reasonably susceptible of more than one interpretation, and the determination of ambiguity or non-ambiguity is made by reference to the contract alone. *Breed,* 413 N.Y.S.2d at 354, 385 N.E.2d at 1282; *Banque Arabe et Internationale D'Investissement v. Maryland National Bank,* 57 F.3d 146 (2nd Cir.1995).

The emphasized language is not ambiguous about the issue of whether some claims are excluded from the agreement to arbitrate. The contract does not say, as the argument advanced by Shearson would require, that "[t]his agreement to arbitrate does not apply to any controversy with a public customer for which a remedy may exist pursuant to an expressed or implied right of action under certain federal securities laws *and which are not subject to an agreement to arbitrate under those laws.*" The arbitration agreement does not apply to any "expressed or implied right of action" which a public customer may have under "certain federal securities laws."

■ Having concluded that Williams' claims under "certain federal securities laws" are not covered by the arbitration agreement, we must determine the effect of the ambiguity in the phrase "certain federal securities laws." The agreement provides no indication of which federal securities laws are contemplated and provides no guidance whatsoever as to which federal securities laws are or are not addressed. While Williams may have agreed to arbitrate some disputes with Shearson, her agreement is both limited in scope and ambiguous as to that scope. As we understand New York law, the ambiguity results in a conclusion that arbitration is not required. Where a particular claim sought to be arbitrated is outside the scope of an arbitration agreement, or the scope of the agreement is ambiguous, there should be a stay of arbitration or a denial of the motion to compel arbitration. *Primiano Construction Co., Inc.,* 51 N.Y.2d at 7, 431 N.Y.S.2d at 481, 409 N.E.2d at 953; *Robert Stigwood Organization, Ltd. v. Atlantic Recording Corporation,* 83 A.D.2d 123, 126, 443 N.Y.S.2d 726 (App.Div. 1 Dept.1981). Absent a clear agreement to arbitrate the federal securities law matters in question, a stay is proper. *Triborough Bridge and Tunnel Authority v. Local 1931, District Council 37, American Federation of State, County and Municipal Employees,* 184 A.D.2d 377, 584 N.Y.S.2d 835 (App.Div. 1 Dept.1992).

■ The order of the trial court finding the Oklahoma Arbitration Act violates Oklahoma Constitution Article 23, § 8 is reversed. This matter is to proceed to trial on Williams' federal securities claims, and to the extent the trial court so allowed, that order is affirmed. Shearson's motion to compel arbitration of Williams' claims insofar as such claims are not based on federal securities laws should have been granted, and to the extent the motion was denied as to those claims, the order is reversed. However, under New York law, arbitration must be stayed until Williams' non-arbitrable claims are resolved. This matter is remanded to the trial court for proceedings consistent with the views expressed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

HUNTER, P.J., and HANSEN, J., concur.