UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

GAMBLE, SIMMONS & COMPANY,

Plaintiff-Appellant,

v.

KERR-MCGEE CORPORATION,

Defendant-Appellee.

Nos. 97-6413 & 98-6033

ORDER
Filed April 22, 1999

Before **BALDOCK, McKAY** and **BRORBY**, Circuit Judges.

On the Court's own motion the opinion filed on April 9, 1999, is withdrawn. A revised opinion issued nunc pro tunc to April 9, 1999, is attached to this order.

Entered for the Court
PATRICK FISHER, Clerk of Court

By:
Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 9 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

GAMBLE, SIMMONS & COMPANY,

Plaintiff-Appellant,

v.

KERR-MCGEE CORPORATION,

Defendant-Appellee.

Nos. 97-6413 & 98-6033

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 95-CV-256)

Submitted on the briefs.[*]

Donald K. Funnell of Lytle Soulé & Curlee, P.C., Oklahoma City, Oklahoma, for
Plaintiff-Appellant.

Burck Bailey and Dino E. Viera of Fellers, Snider, Blankenship, Bailey &
Tippens, P.C., Oklahoma City, Oklahoma, for Defendant-Appellee.

Before **BALDOCK, McKAY** and **BRORBY**, Circuit Judges.

---

[*]  After examining the briefs and appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).
The case is therefore ordered submitted without oral argument.

**BRORBY**, Circuit Judge.

_____

This appeal involves the interpretation of a contract between Appellant, Gamble, Simmons and Company ("Gamble Simmons") and Appellee, Kerr-McGee Corporation ("Kerr-McGee"), for tax consulting services. Gamble Simmons claims Kerr-McGee undercompensated the company for an audit review it performed and now brings this consolidated appeal challenging the district court's grant of summary judgment and an award of attorneys' fees in favor Kerr-McGee. We exercise jurisdiction pursuant to 18 U.S.C. §1291, and affirm in part, reverse in part, and remand.


I. Introduction

Gamble Simmons is a tax consulting firm specializing in the review and evaluation of audits by state taxing authorities. In September 1988, shortly after the Louisiana Department of Revenue and Taxation ("the Department") issued Kerr-McGee a "Notice of Tax Due," including tax, interest and penalties based on Sales and Use tax assessments for the years 1982-1984, Gamble Simmons approached Kerr-McGee with an offer to review the company's records and determine whether it properly owed the taxes assessed, and whether the amount of tax could be reduced. Concerned about its tax liability, Kerr-McGee accepted Gamble Simmons' offer; and, in May 1991, the parties entered a contract

(hereinafter "contract" or "agreement") under which Gamble Simmons agreed to perform its tax consulting services for Kerr-McGee. The payment provisions of the agreement specifically obligate Kerr-McGee to pay Gamble Simmons "an amount equal to forty percent (40%) of the amount, if any, by which the total amounts of taxes, penalties and/or interest ... heretofore paid by Kerr-McGee ... and/or assessed by the Department ... are refunded or reduced."

Gamble Simmons performed under the agreement for the next three years, ultimately obtaining a very favorable outcome for Kerr-McGee. As a result of Gamble Simmons' efforts, the Department admitted Kerr-McGee owed no additional taxes or interest for the years 1982-1984 and that it had actually overpaid taxes in the amount of $1,447,985. The Department subsequently refunded a portion of that amount directly to Kerr-McGee and applied the balance to offset taxes and interest Kerr-McGee owed for 1985-1987.

After obtaining the favorable result, Gamble Simmons billed Kerr-McGee $1,095,439 for its services. However, Kerr-McGee disputed the charges and paid Gamble Simmons only $665,418, a figure Kerr-McGee arrived at through its own independent calculations. The difference between the parties' figures resulted from their conflicting interpretations of certain contract provisions and

disagreement over what amounts to include in determining the contingency fee owed to Gamble Simmons. After settlement efforts failed, Gamble Simmons filed suit in the district court of Harris County, Texas to recover the difference in the amount claimed and the amount Kerr-McGee actually paid. Kerr-McGee subsequently removed the diversity action to federal court in the Western District of Oklahoma.

Gamble Simmons' final amended complaint stated several alternative causes of action. First, Gamble Simmons argued that by choosing to take a refund of tax and interest generated by its efforts rather than applying the credit to subsequent years' tax liability – which would have resulted in reduced penalty and interest liability for those years – Kerr-McGee deprived Gamble Simmons of its forty percent fee on the savings. Second, Gamble Simmons alleged, as an alternative to its first cause of action, that Kerr-McGee received total benefits from Gamble Simmons' efforts in the amount of $2,738,597.53 in tax, interest, and penalty reductions and refunds, and that the contract entitles Gamble Simmons to forty percent of those benefits. Specifically, Gamble Simmons claimed its compensation should include statutory interest paid to Kerr-McGee by the Department as part of the refund for overpayment. In its third cause of action, Gamble Simmons asserted, in the alternative, that because Kerr-McGee

representatives admitted the contract entitles Gamble Simmons to its percentage share of interest included as part of the refund, and some of Kerr-McGee's own calculations indicate it owed Gamble Simmons $982,156.70, Kerr-McGee must pay Gamble Simmons the balance due of $316,738.60 plus pre-judgment interest. Fourth, as an alternative to its third cause of action, Gamble Simmons asserted that based on the actual refund Kerr-McGee received from the Department of $1,274,732.10, the correct amount payable to Gamble Simmons based on Kerr-McGee's own calculation methods was $1,016,917.29, leaving an unpaid balance of $351,499.19 plus pre-judgment interest. Fifth, Gamble Simmons argued that even if the court found the contract did not permit it to share in interest Kerr-McGee received as part of the refund from the Department, the agreement at least entitles Gamble Simmons to its fee on the benefits conferred minus the interest. Gamble Simmons asserted this alternative amount was $787,498.94, and requested relief in the amount of the deficiency, $122,080.84, plus pre-judgment interest. Finally, in its sixth cause of action, Gamble Simmons contended Kerr-McGee breached the contract by refusing to allow Gamble Simmons to review Kerr-McGee's books for periods beyond 1982-1984, and as a result, Gamble Simmons suffered the loss of fees it could have generated through reviewing later years' records.

In September 1995, both parties filed simultaneous cross-motions for summary judgment to resolve Gamble Simmons' claims. The district court issued an order on June 20, 1996 in which it addressed the parties' motions and granted summary judgment in favor of Gamble Simmons in the amount of $769,850 less payments already made by Kerr-McGee. In reaching this conclusion, the district court decided the contract is not ambiguous and does not entitle Gamble Simmons to a portion of the interest paid to Kerr-McGee as part of the refund for overpayment. However, this initial interlocutory order did not dispose of all the issues in the case, and the parties subsequently filed additional cross-motions for summary judgment pertaining to the remaining issues.

On June 4, 1997, the district court issued a comprehensive Memorandum Opinion and Order covering the remaining claims. The court decided the contract entitles Gamble Simmons to forty percent of the 1982-1984 refund generated through its efforts; but, the agreement does not allow Gamble Simmons to collect forty percent of the incidental interest and penalty reductions in subsequent years resulting from the application of 1982-1984 tax refund to the later periods. The district court based its decision primarily on the fact that the incidental interest or penalty savings Kerr-McGee realized on the 1985-1987 audit were not based directly on Gamble Simmons' work product or information.

Additionally, the district court ruled the contract between the parties only contemplated a single audit involving the examination of Kerr-McGee's 1982-1984 records. The court refused to grant Gamble Simmons' request to review Kerr-McGee's 1985-1991 records for any other purposes.[1]

After the court's summary judgment rulings, the parties were unable to reach an accord on a proposed judgment as ordered by the court. Consequently, on October 27, 1997, the district court issued its own final judgment granting Kerr-McGee's motion for summary judgment and awarding Gamble Simmons $665,418 for its services – the exact amount Kerr-McGee had already paid.

On appeal, Gamble Simmons raises several issues. First, it contends the district court erred in finding Gamble Simmons was not entitled to a percentage of the interest the Department paid to Kerr-McGee as part of a refund for overpayment of taxes. Second, Gamble Simmons claims the district court should have considered extrinsic evidence it submitted regarding the formation of the agreement, the parties' subjective interpretations of the agreement, and certain

---

[1] The court noted the parties allowed Gamble Simmons to examine other years' records but only for purposes related to the 1982-1984 audit of Sales and Use taxes.

alleged admissions made by Kerr-McGee representatives regarding amounts owed to Gamble Simmons. Third, Gamble Simmons argues the district court erred when it decided the agreement only covered the audit of tax years 1982-1984. Fourth, Gamble Simmons claims the district court should have granted its Motion to Settle Contents, entered final judgment in its favor, and granted its motion for an evidentiary hearing on the contract interpretation issues. Finally, in a consolidated appeal, Gamble Simmons disputes the district court's award of attorneys' fees to Kerr-McGee.

## II. Standard of Review

Because this appeal is based solely on the district court's summary judgment rulings, we review the case *de novo*, employing the same legal principles as the district court and construing the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *See Byers v. Albuquerque* 150 F.3d 1271, 1274 (10th Cir. 1998); *Kane v. Capital Guardian Trust Co.*, 145 F.3d 1218, 1221 (10th Cir. 1998). Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine only if the nonmovant presents facts sufficient to show that a reasonable

jury could find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lawmaster v. Ward*, 125 F.3d 1341, 1346-47 (10th Cir. 1997). If our inquiry reveals no genuine issue of material fact in dispute, then we review the case to determine if the district court correctly applied the substantive law. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996).

### III. Contract Claims

The present case requires us to ascertain the intent of the parties as expressed under the terms of their agreement with regard to Gamble Simmons' compensation. We must decide what portion of the tax reduction and refunds attributable to Gamble Simmons' efforts are properly included as elements of its contingency fee under the agreement and what tax years the agreement encompasses.

As a preliminary matter, we emphasize the law of the forum where the contract is made or is to be performed generally governs contract actions of this sort. *Bohannan v. Allstate Ins. Co.*, 820 P.2d 787, 793 (Okla. 1991); *see also* Okla. Stat. tit. 15, § 162. In this diversity action the parties agree, and we find, the law of Oklahoma controls our inquiry.

In Oklahoma, a comprehensive statutory scheme governs contractual agreements. *See* Okla. Stat. tit. 15, §§ 151 - 178. These statutes provide that whenever possible we must give effect to mutual intent of the parties as expressed in the language of the contract, so long as it is unambiguous on its face and there exists no "fraud, accident, or pure absurdity" affecting the agreement. *Public Serv. Co. of Okla. v. Burlington Northern R.R. Co.*, 53 F.3d 1090, 1097 (10th Cir. 1995); Okla. Stat. tit. 15, § 154. If the contract is ambiguous, then we may resort to extrinsic evidence, including the subsequent statements and actions of the parties, in order to construe the agreement. *See Pierce Couch Hendrickson Baysinger & Green v. Freede*, 936 P.2d 906, 912 (Okla. 1997). However, if the contract is unambiguous its language is the only legitimate evidence of what the parties intended, *see Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d, 523m 529 (Okla. 1985), and we will not rely on extrinsic evidence to vary or alter the plain meaning. *See, e.g., Empire Oil & Ref. Co. v. Babson*, 77 P.2d 682, 684 (Okla. 1938) (ruling that resort to extraneous evidence is proper only if the contract is ambiguous.)

A.     The Question of Ambiguity

Because Gamble Simmons seeks to prove the parties' intent by utilizing extrinsic evidence, we must determine the admissibility of such evidence by first

-10-

deciding as a matter of law whether the terms of the contract between Kerr-McGee and Gamble Simmons are ambiguous. *Kerr-McGee Corp. v. Admiral Ins. Co.,* 905 P.2d 760, 762 (Okla. 1995). Oklahoma law states "[a] contract is ambiguous if reasonably susceptible of more than one interpretation." *Williams v. Shearson Lehman Bros., Inc*., 917 P.2d 998, 1004 (Okla. Ct. App. 1996), or "through vagueness of expression it has a double meaning." *See Cinocca v. Baxter Labs., Inc.*, 400 F. Supp. 527, 532 (E.D. Okla. 1975). In other words, a contract is ambiguous if reasonably intelligent persons, on reading the contract, would honestly differ as to its proper meaning. *See United States Fidelity & Guar. Co. v. Guenther*, 281 U.S. 34, 37 (1930).

In this case, we acknowledge the parties' basic disagreement over the interpretation of several provisions of the contract. However, the mere fact that the parties disagree about the meaning of a contract or argue for a different construction does not necessarily make the agreement ambiguous. A party cannot manufacture an ambiguity in a contract that is clear on its face merely by filing a lawsuit contesting its meaning or claiming an alternative interpretation. Moreover, if a contract is plain and unambiguous, it does not become ambiguous because its operation will work a hardship upon one of the parties and a corresponding advantage to the other. The dispositive factor in our analysis is

-11-

not whether the parties disagree or inequity results, but whether an examination of the entire agreement reveals more than one reasonable interpretation. *Bartmann v. Maverick Tube Corp*., 853 F.2d 1540, 1545 (10th Cir. 1988) (finding "[a] term is unambiguous where it is reasonably and fairly susceptible of only one meaning").

In order to decide whether the contract is ambiguous, we look at the whole contract and construe the words as they are "understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage." Okla. Stat. tit. 15, §160. In the present case, the parties' intent is apparent, regardless of whether the terms are read in their ordinary, legal, or technical sense. The compensation clause at the heart of this contract dispute plainly and succinctly enumerates the elements of tax savings properly included in calculating Gamble Simmons' contingency fee, as well as the tax years for which Gamble Simmons is permitted to perform its services. Although Gamble Simmons urges us to find the terms ambiguous and thereby allow the introduction of extrinsic evidence tending to contradict the express contract language, we decline to indulge its strained construction of the agreement to "create and then construe an ambiguity so as to import a favorable consideration to either party

than that expressed in the contract." *Kerr-McGee,* 905 P.2d at 763 (internal quotation marks & citation omitted); *see also Max True Plastering Co. v. United States Fidelity & Guar. Co.*, 912 P.2d 861, 869 (Okla. 1996) (refusing to indulge in constrained interpretations of contracts to find ambiguity). Our review of the record reveals contract terms that are unambiguous, readily understood, and not "fairly susceptible" of various interpretations. Therefore, in the absence of any "fraud, deception, or unfair dealing" by either party in procuring the agreement, or "legal impediment shown" that prevented the parties from entering into the contract and expressing it in language of their own choosing, we will not resort to extrinsic evidence to interpret or revise the agreement. *Northwestern Oil & Gas Co. v. Branine*, 175 P. 533, 534 (Okla. 1918). [2]

B.  Applying the Terms of the Contract

Having decided the contract is unambiguous and a clear reflection of the parties' intentions, we now apply the terms of the contract to resolve the

---

[2] Because we find the terms pertaining to contested issues in this lawsuit unambiguous, we ignore Gamble Simmons' proposed evidence of telephone conversations with Kerr-McGee representatives and any other extrinsic evidence tending to disturb or alter the plain meaning of the contract terms. *See Prudential Ins. Co. v. Glass,* 959 P.2d 586, 594 (Okla. 1998) (ruling that if a contract is complete in itself and is unambiguous when viewed in its entirety, "its language is the only legitimate evidence of what the parties intended").

contested contractual issues in this case. The agreement plainly reveals the parties' intent with regard to both the amounts to include in calculating Gamble Simmons' contingency fee and the permissible scope of its right to review Kerr-McGee's records.

1.  Refund Amounts Properly Included the Contingent Fee

In terms of compensation, the contract states that Gamble Simmons should receive

> an amount equal to forty percent (40%) of the amount, if any, by which the *total amounts* of taxes, penalties and/or interest calculated through the date of this Agreement *heretofore paid* by Kerr-McGee to its vendors, the State of Louisiana and/or *assessed* by the Department but remain unpaid as of the date hereof, are refunded or reduced ....

(Emphasis added). Interpreting this clause, the district court correctly decided the agreement entitles Gamble Simmons to no more compensation for its services than forty percent of any refund or reduction in taxes previously paid or assessed as part of the 1982-1984 audit. In other words, the statutory interest the Department included as part of the refund to Kerr-McGee is not an amount subject to Gamble Simmons' contingency fee under the contract because it does not reflect an amount paid by Kerr-McGee or assessed against it for the years 1982-1984. The statutory interest actually represents a reasonable return on the

amount the Department erroneously charged Kerr-McGee in prior years. Nowhere does the contract contemplate Gamble Simmons sharing in this statutory interest either expressly or impliedly. We note, however, the contract provides Gamble Simmons should receive forty percent of the refund or reduction based on the total amount of 1982-1984 taxes overpaid or assessed in 1982-1984, regardless of whether the overpayment is actually repaid directly to Kerr-McGee or applied to later years' tax liability – as long as those amounts are based on Gamble Simmons' efforts during the its review of the 1982-1984 audit.

We find Gamble Simmons' counter-arguments on this point unavailing. Our interpretation of the contract does not, as Gamble Simmons contends, render the term "refund" in the contract a nullity. Rather, it reflects the intent of the parties as clearly expressed in the terms of the contract by giving effect to the meaning of "refund" as used in conjunction with other language in the contract to limit Gamble Simmons' contingency fee to refund amounts "heretofore paid" by Kerr-McGee or "assessed" by the Department. Moreover, our reading of the contract does not have the effect of eliminating the reduction of assessed interest as part of Gamble Simmons' contingent compensation. On the contrary, we recognize the contract clearly requires Kerr-McGee to pay Gamble Simmons its contingent share of reductions in interest assessed against Kerr-McGee for the

1982-1984 audit period. The "interest" not subject to Gamble Simmons' contingent fee is the statutory interest awarded to Kerr-McGee as part of the refund for overpayment.

We are similarly unpersuaded by Gamble Simmons' argument asserting that because Louisiana Rev. Stat. Ann. § 47:1624(A) mandates the payment of interest as part of a Department refund for tax overpayments, the statute must be read into Gamble Simmons' contract with Kerr-McGee to make the term "refund" include the statutory interest. Gamble Simmons' argument on this point refers to a sound legal principle of contract construction which states " *unless the contract discloses a contrary intention*, an existing statute will be read into it to the same effect as an express provision." *United States v. Essley,* 284 F.2d 518, 520 (10th Cir. 1960) (emphasis added). Nevertheless, we question the applicability of this principle in the present case because the contract expresses an intention contrary to the statute. Again, we emphasize the terms of the contract expressly limit Gamble Simmons' contingent share to amounts "heretofore paid" or "assessed" that are "refunded or reduced." In light of this limiting language in the contract that discloses an intention not to include the statutory interest as part of the refund, we decline to interpret the term refund as used in the contract to incorporate Louisiana Rev. Stat. Ann. § 47:1624(A).

-16-

All other arguments aside, the basic problem with Gamble Simmons' position is that it urges us to imply contract provisions that simply are not there. For example, in its brief Gamble Simmons states that "paragraph 4 of the Agreement clearly contemplates that to the extent Kerr-McGee *received any benefit* in reduction of taxes, interest and penalties, Gamble Simmons' fee would be 40% thereof." (Emphasis added). However, Gamble Simmons' statement does not reflect the agreement of the parties as expressed in the unambiguous terms of the contract. The agreement between the parties is not to pay Gamble Simmons a portion of any *benefit* Kerr-McGee received through Gamble Simmons' efforts, but a contingent interest in the amount by which Gamble Simmons' services resulted in the refund or reduction of taxes, interest, and/or penalties previously paid by Kerr-McGee or assessed by the Department during the audit period. The contract enumerates a specific range of compensable interests, not the wide-open "benefit" approach Gamble Simmons advocates.

2.    Application of the Refund to Subsequent Years' Tax Liability

We also agree with the district court's assessment with regard to the application of the contract to later years' taxes. Gamble Simmons is only entitled to its contingent share of the refund or reduction in amounts previously paid or assessed for tax years 1982-1984, whether such amounts are actually paid directly

to Kerr-McGee or applied to later years' taxes.

In addition to its share of the 1982-1984 refund amounts applied to Kerr-McGee's 1985-1987 tax liability, Gamble Simmons also claims Kerr-McGee owes it forty percent of the interest reductions Kerr-McGee realized in the 1985-1987 audit period through application of the 1982-1984 refund. However, Gamble Simmons' claim again contravenes the language of the contract. Our reading of the agreement persuades us that Gamble Simmons is entitled to compensation only for whatever amount its efforts *directly* caused the Department to refund or reduce taxes, interest and penalties previously paid by or assessed against Kerr-McGee with regard to the 1982-1984 audit. The indirect, incidental benefit of interest reduction that occurred as a result of the Department's unilateral application of a portion of the 1982-1984 refund to Kerr-McGee's later years' tax liability is not subject to Gamble Simmons' forty percent contingent fee because the interest reduction is not the *direct result* of Gamble Simmons efforts with regard to its 1982-1984 audit review. In other words, the incidental benefit to Kerr-McGee for the interest reduction in 1985-1987 represents the consequence of the Department's decision to apply the 1982-1984 refund to subsequent audits – *not* the result of Gamble Simmons' efforts.

This result makes sense if we hypothesize for a moment about what amount Gamble Simmons would have received if the Department had refunded the entire sum directly to Kerr-McGee and not applied any amount toward subsequent tax liabilities. Under those circumstances, Gamble Simmons would still receive its forty percent share of the refunded amount as provided by the contract, but it would have no further claim for compensation from any incidental or secondary financial benefit Kerr-McGee might enjoy through the productive use of the refund. For example, if Kerr-McGee took the refund and immediately paid off an outstanding debt, Gamble Simmons clearly would not have a viable claim for a share of the interest savings Kerr-McGee would realize from the transaction. Likewise, if Kerr-McGee took the refund and immediately paid its tax liability for the 1985-1987 audit, Gamble Simmons would have no claim to the accompanying reduction in interest on the tax liability. We see no difference of any significance between these hypothetical examples and what actually happened in the present case. The Department's unilateral decision to apply a portion of the 1982-1984 refund to the later audit has the same effect as if Kerr-McGee itself had received the refund and immediately paid its 1985-1987 tax liability.

If the contract had stated the parties' intention for Gamble Simmons to not

only share in the reduction or refund of taxes, penalties or interest Kerr-McGee

realized from Gamble Simmons efforts with regard to the 1982-1984 audit, *but*

*also* whatever incidental reduction resulted from the application of the 1982-1984

refund to later years' tax liability, then Gamble Simmons would have a viable

claim for its share of the incidental benefit. However, understood in its entirety,

the contract simply does not evidence Gamble Simmons' right to share in the

secondary benefits realized by Kerr-McGee through the Department's unilateral

application of the 1982-1984 refund to the 1985-1987 audit. Therefore, we

affirm the district court's conclusion that refunds and reductions in taxes,

penalties, and interest previously paid or assessed in 1982-1984 are subject to

Gamble Simmons' forty percent fee, but the incidental reductions in interest or

penalties resulting from the application of the 1982-1984 refund are not. [3]

---

[3] Gamble Simmons makes a very puzzling argument in its brief contesting the district court's finding on this issue we feel compelled to address. It asserts that if the district court's conclusion regarding the interpretation of the contract is taken to its logical extreme, it would mean Gamble Simmons would receive no compensation if the entire refund it generated had been applied to subsequent years' taxes, interest, and penalties. If this is Gamble Simmons' understanding of the district court's ruling, we believe it has misinterpreted the findings. Our decision to deny Gamble Simmons any compensation for benefits realized by Kerr-McGee from the application of a portion of the refund to subsequent years' taxes under the terms of the contract, in no way means Gamble Simmons would get nothing for its services if the refund was applied entirely to subsequent years. On the contrary, Gamble Simmons is entitled to everything the contract allows – forty percent of taxes, interest, and/or penalties previously paid or assessed during the 1982-1984 audit period which the Department refunded or reduced because of Gamble Simmons efforts. As long as the refund represents such amounts, Gamble

-20-

3.      Access to Later Years' Records

To the extent Gamble Simmons requests access Kerr-McGee's records for later years' taxes, we find the terms of the contract do not so provide. The agreement only allows

> Gamble Simmons to review Kerr-McGee's books and records with respect to transactions involving Louisiana Sales and Use Taxes for the applicable statutory periods for the purpose of evaluating said audits and assessments and advising Kerr-McGee with respect thereto ....

Although, viewed in isolation, this provision contains no express limitations on Gamble Simmons' asserted right to audit Kerr-McGee's records, we must interpret it in light of the entire contract.      *See* Okla. Stat. Ann. tit. 15, § 157 (1991) ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."). In addition to the clause noted, the contract also contains other provisions that lend context and perspective to our application. The opening recitals are especially helpful to objectively analyze the intent of the parties with regard to the scope of the audit. They discuss the Department's audit of Kerr-

Simmons is entitled to its share whether the refund is paid directly to Kerr-McGee or applied to subsequent years. What Gamble Simmons does not share in as part of its compensation, is the resulting incidental tax, penalty and/or interest reduction realized through application of the refund to later tax years because that reduction is not directly attributable to services Gamble Simmons   performed in its review of the 1982-1984 audit.

McGee's Sales and Use taxes paid in 1982-1984, and imply that the Department's audit was the driving force behind Kerr-McGee's decision to contract for Gamble Simmons' services. Using these initial recitals as a backdrop, we find the only reasonable construction of the subsequent terms of the contract is that the parties intended to limit the scope of Gamble Simmons' work to the 1982-1984 audit. When the contract refers specifically to "the applicable statutory periods", we believe that clause plainly makes reference to the aforementioned 1982-1984 audits discussed in the opening recitals of the contract, not "applicable statutory periods" in the some general sense. Accordingly, we find the agreement contains no compelling support for Gamble Simmons' argument that it is entitled to examine Kerr-McGee's records for additional statutory periods, other than where necessary as incidental to its audit for 1982-1984. [4]

---

[4] Moreover, even if we strained the language to find the contract allowed Gamble Simmons to review later tax years, in no way does the contract indicate the parties mutually agreed to have Gamble Simmons perform its services and receive compensation for tax years beyond the 1982-1984 period specifically discussed in the opening recitals of the contract.

IV. Post-Summary Judgment Proceedings

A.    Background

Following the district court's June 4, 1997 Memorandum & Order granting Kerr-McGee's motion for summary judgment, the court instructed the parties to submit a proposed final judgment reflecting the court's ruling. However, negotiations failed and the parties were unable to reach an accord regarding the content of the final judgment. The parties essentially disagreed about how to calculate Gamble Simmons' final compensation, while giving effect to the district court's interpretation of the contract. The major point of contention was whether to exclude from Gamble Simmons' compensation certain refunds the Department made to Kerr-McGee of payments Kerr-McGee rendered after the execution of the agreement (hereinafter "post-agreement payments"). Because the parties could not agree, Gamble Simmons filed a motion to settle the contents of the final judgment and a request for an evidentiary hearing on the compensation calculation issue. After consideration of the parties' arguments, the district court denied Gamble Simmons' post-summary judgment motion to settle contents and request for an evidentiary hearing in an order dated October 27, 1997. In its order, the district court stated its summary judgment orders already resolved all the issues presented, and it would enter judgment in favor of Kerr-McGee.

In its brief on appeal and in post-summary judgment proceedings before the district court, Gamble Simmons argues that even under the contractual interpretation outlined in the district court's orders, Kerr-McGee still owes money for services Gamble Simmons rendered. In support of its contention, Gamble Simmons submits an affidavit including calculations showing that, even excluding statutory interest refunded to Kerr-McGee and any benefit to Kerr-McGee from the application of the refund to later audits as instructed by the district court, Gamble Simmons still produced a benefit to Kerr-McGee in tax, penalty and interest refunds and reductions totaling $1,750,446.75. After taking forty percent of that amount ($700,178.70) and subtracting what Kerr-McGee has already paid ($665,418.10), Gamble Simmons claims Kerr-McGee still owes it the difference of $34,760.60 plus prejudgment interest.

In reply to Gamble Simmons' arguments, Kerr-McGee claims it has paid Gamble Simmons everything it owes, and explains the relatively small monetary difference between the amount it paid and the amount Gamble Simmons requests as attributable to certain "post-agreement payments" it made to the state of Louisiana. Kerr-McGee claims it made these payments to satisfy tax liabilities arising from Department audits encompassing the years 1985-1987, and that the Department later refunded the payments after it determined Kerr-McGee had

overpaid its tax liabilities for 1982-1984.  Kerr-McGee argues that because it made the payments after contracting with Gamble Simmons, it need not include these amounts in its compensation calculations.  In support of this claim, Kerr-McGee cites the terms of the contract which limit Gamble Simmons contingent interest to forty percent of any refund or reduction of amounts paid or assessed *as of the date of the agreement*.

B.     Discussion

We agree with Kerr-McGee to the extent that the contract unambiguously limits Gamble Simmons' compensation to payments or assessments made prior to the execution of the agreement.  The contract specifically requires Kerr-McGee to pay Gamble Simmons forty percent of any reduction or refund in "total amounts of taxes, penalties and/or interest calculated *through the date of this Agreement*." (Emphasis added).  In other words, Gamble Simmons has no viable claim under the strict contractual language to any refund of payments Kerr-McGee made, if any, subsequent to the agreement date.  The contract is clear on this point, and its interpretation is properly the subject of summary adjudication.  Nevertheless, we find the court's order problematic because it does not specifically address the issue of the alleged post-agreement payments, or sufficiently explain its rationale for determining that Kerr-McGee only owes Gamble Simmons what it had

previously paid.

In our estimation, the district court overlooked a valid, additional issue raised by Gamble Simmons at this stage in the proceedings, specifically Kerr-McGee's alleged post-agreement payments. We find no evidence of such payments in Kerr-McGee's brief on appeal or in the proceedings below. In its brief, Kerr-McGee makes a general citation to the affidavit of its Assistant Tax Director for Research and Audits to support its claim. However, Kerr-McGee never explains how or where the affidavit shows any evidence of post-agreement payments, nor does our independent study of the affidavit reveal any support for Kerr-McGee's post-agreement payment claim. [5]

Consequently, we must reverse the district court to the extent its decision rests upon Kerr-McGee's unsubstantiated assertions of post-agreement payments. We remand for further proceedings with regard to the discrete issue of the post-

---

[5] Perhaps somewhere buried in the record there is some support for Kerr-McGee's position, but our review found no evidence either in the affidavit or other portions of the record. In the absence of sufficient citation to record support for a party's allegations, we decline to search for the proverbial needle in a haystack. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995). If we have overlooked some crucial evidence, the parties will no doubt expose it on remand.

agreement payments and their effect on the ultimate calculation of Gamble Simmons' compensation. On remand, the district court should afford the parties the opportunity to present evidence on the issue of the disputed post-agreement payments and provide a final, accurate calculation of Gamble Simmons' compensation based on our rulings in this case. As the case now stands on the record before us, we find no evidence to support the court's summary judgment relating to the discrete issue of post-agreement payments and the effect, if any, on the amount owed to Gamble Simmons for its services under the contract.

V. Attorneys' Fees

As part of this consolidated appeal, we also consider Gamble Simmons' challenge to the district court's award of attorneys' fees and costs to Kerr-McGee. In its first claim of error, Gamble Simmons asserts the district court should have stayed the determination of costs and attorneys' fees pending our review of the underlying contract issues. Second, Gamble Simmons argues the district court committed error by failing to make findings of fact and conclusions of law regarding the award of attorneys' fees and refusing to grant an evidentiary hearing on the reasonableness of the attorneys' fees. Finally, Gamble Simmons claims the district court's ultimate award of attorneys' fees to Kerr-McGee was unreasonable.

Oklahoma law provides "[i]n any civil action to recover on ... [a] contract relating to ... labor or services, ... the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs." Okla. Stat. tit. 12, § 936. The award of attorneys' fees to the prevailing party under this provision is mandatory. *Arkla Energy Resources v. Roye Realty and Developing, Inc*., 9 F.3d 855, 865 (10th Cir.1993) (citing *Ellis v. Lebowitz*, 799 P.2d 620, 621 (Okla. 1990)). However, the determination of reasonableness and amount of the fee award is generally left to the sound discretion of the district court. *Harris Mkt. Research v. Marshall Mktg. & Communitcations, Inc.*, 948 F.2d 1518, 1527 (10th Cir. 1991) (applying an abuse of discretion standard and noting "an appellate court plays a 'limited role' in reviewing a district court's award of attorneys' fees and costs, and deference is given to a district court's judgment on the matter, since the court is in a better position to assess the course of litigation and quality of work." (Internal quotation marks & citation omitted)). Often, a hearing may be necessary to resolve material factual disputes between the parties over the reasonableness and amount of attorneys' fees, *see Michael A. Cramer, MAI, SRPA, Inc. v. United States*, 47 F.3d 379, 383 (10th Cir. 1995) (finding "an evidentiary hearing is generally preferred, if not required, when factual diputes exist in connection with a request for attorneys fees"), unless the district court determines it has sufficient knowledge to make a decision without a

hearing based on its experience with the case, and briefs and affidavits submitted by the parties *id.* at 383-84; *Harris Mkt. Research*, 948 F.2d at 1528 (affirming grant, without evidentiary hearing, of prevailing party's request for attorneys' fees pursuant to contract where "[n]o hearing was necessary to aid the trial court's determination").  In any event, the district court should consider:  (1) what attorney services were performed; (2) which services were necessary; (3) the value of the necessary services; and (4) what a reasonable fee for the services would be.  *Darrow v. Spencer*, 581 P.2d 1309, 1314 (Okla. 1978).  The court should then make an adequate record of its findings in the event appellate review is required.  *See King v. McCord*, 621 F.2d 205, 207 (5th Cir. 1980) (holding district court's ruling on attorneys' fees without proper explication of its rationale renders appellate review of the award a "meaningless gesture").

Although these principles establish the bases for our review of an attorneys' fees award, we decline to address any of the procedural and substantive issues raised by Gamble Simmons at this point.  Although the parties' dispute over attorneys' fees would have been ready for our review had we affirmed the district court's judgment in all respects, because our decision to reverse in part and remand for further proceedings may require the district court to alter or amend its final judgment, we feel a decision on the merits of the

attorneys' fees claim would be premature. If, for example, the district court ultimately determines Kerr-McGee still owes Gamble Simmons some degree of compensation, the court may alter its decision regarding the amount of attorneys' fees to award or perhaps even change who qualifies as the "prevailing party" under Okla Stat. tit. 12, § 936. Accordingly, due to the unsettled nature of the underlying judgment, we refrain from rendering an opinion on the attorneys' fees issues raised by Gamble Simmons. We leave the attorneys' fees issue open for unfettered reconsideration by the district court at the conclusion of these proceedings on remand.

## VI. Conclusion

In summary, upon *de novo* review of these proceedings, we find the contract between Gamble Simmons and Kerr-McGee is unambiguous and any extrinsic evidence tending to alter the reasonable interpretation of the agreement is inadmissible. The contract clearly indicates Gamble Simmons should receive forty percent of the amount by which its efforts caused the Department to refund or reduce Kerr-McGee's taxes, penalties and/or interest previously paid or assessed for 1982-1984. Accordingly, Gamble Simmons' contingent fee should not include statutory interest included as part of the Department's refund paid to Kerr-McGee, additional benefits realized by Kerr-McGee from the application of

a portion of the refund to tax liabilities for later years, or post-agreement payments, if any, later refunded to Kerr-McGee. Also, we find the contract does not permit Gamble Simmons to review Kerr-McGee books and records for later years, other than incident to Gamble Simmons' review of the 1982-1984 audit. Therefore, we affirm the decision of the district court to the extent its summary judgment rulings reflect these conclusions. However, we reverse in part and remand for the district court to consider whether Kerr-McGee's claimed post-agreement payments find sufficient evidentiary support to merit summary adjudication. Finally, in light of our decision, we decline to address the issues pertaining to the district court's award of attorneys' fees pending the outcome of the proceedings on remand.

We **AFFIRM** in part, **REVERSE** in part and **REMAND** for further proceedings consistent with this opinion.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 9 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

GAMBLE, SIMMONS & COMPANY,

    Plaintiff-Appellant,

v.

KERR-MCGEE CORPORATION,

    Defendant-Appellee.

Nos. 97-6413 & 98-6033

---

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 95-CV-256)

---

Submitted on the briefs.[*]

Donald K. Funnell of Lytle Soulé & Curlee, P.C., Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Burck Bailey and Dino E. Viera of Fellers, Snider, Blankenship, Bailey & Tippens, P.C., Oklahoma City, Oklahoma, for Defendant-Appellee.

---

Before **BALDOCK, McKAY** and **BRORBY**, Circuit Judges.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**BRORBY**, Circuit Judge.

---

This appeal involves the interpretation of a contract between Appellant, Gamble, Simmons and Company ("Gamble Simmons") and Appellee, Kerr-McGee Corporation ("Kerr-McGee"), for tax consulting services. Gamble Simmons claims Kerr-McGee undercompensated the company for an audit review it performed and now brings this consolidated appeal challenging the district court's grant of summary judgment and an award of attorneys' fees in favor Kerr-McGee. We exercise jurisdiction pursuant to 18 U.S.C. §1291, and affirm in part, reverse in part, and remand.

## I. Introduction

Gamble Simmons is a tax consulting firm specializing in the review and evaluation of audits by state taxing authorities. In September 1988, shortly after the Louisiana Department of Revenue and Taxation ("the Department") issued Kerr-McGee a "Notice of Tax Due," including tax, interest and penalties based on Sales and Use tax assessments for the years 1982-1984, Gamble Simmons approached Kerr-McGee with an offer to review the company's records and determine whether it properly owed the taxes assessed, and whether the amount of tax could be reduced. Concerned about its tax liability, Kerr-McGee accepted

Gamble Simmons' offer; and, in May 1991, the parties entered a contract (hereinafter "contract" or "agreement") under which Gamble Simmons agreed to perform its tax consulting services for Kerr-McGee. The payment provisions of the agreement specifically obligate Kerr-McGee to pay Gamble Simmons "an amount equal to forty percent (40%) of the amount, if any, by which the total amounts of taxes, penalties and/or interest ... heretofore paid by Kerr-McGee ... and/or assessed by the Department ... are refunded or reduced."

Gamble Simmons performed under the agreement for the next three years, ultimately obtaining a very favorable outcome for Kerr-McGee. As a result of Gamble Simmons' efforts, the Department admitted Kerr-McGee owed no additional taxes or interest for the years 1982-1984 and that it had actually overpaid taxes in the amount of $1,447,985. The Department subsequently refunded a portion of that amount directly to Kerr-McGee and applied the balance to offset taxes and interest Kerr-McGee owed for 1985-1987.

After obtaining the favorable result, Gamble Simmons billed Kerr-McGee $1,095,439 for its services. However, Kerr-McGee disputed the charges and paid Gamble Simmons only $665,418, a figure Kerr-McGee arrived at through its own independent calculations. The difference between the parties' figures resulted

from their conflicting interpretations of certain contract provisions and disagreement over what amounts to include in determining the contingency fee owed to Gamble Simmons. After settlement efforts failed, Gamble Simmons filed suit in the district court of Harris County, Texas to recover the difference in the amount claimed and the amount Kerr-McGee actually paid. Kerr-McGee subsequently removed the diversity action to federal court in the Western District of Oklahoma.

Gamble Simmons' final amended complaint stated several alternative causes of action. First, Gamble Simmons argued that by choosing to take a refund of tax and interest generated by its efforts rather than applying the credit to subsequent years' tax liability – which would have resulted in reduced penalty and interest liability for those years – Kerr-McGee deprived Gamble Simmons of its forty percent fee on the savings. Second, Gamble Simmons alleged, as an alternative to its first cause of action, that Kerr-McGee received total benefits from Gamble Simmons' efforts in the amount of $2,738,597.53 in tax, interest, and penalty reductions and refunds, and that the contract entitles Gamble Simmons to forty percent of those benefits. Specifically, Gamble Simmons claimed its compensation should include statutory interest paid to Kerr-McGee by the Department as part of the refund for overpayment. In its third cause of

action, Gamble Simmons asserted, in the alternative, that because Kerr-McGee representatives admitted the contract entitles Gamble Simmons to its percentage share of interest included as part of the refund, and some of Kerr-McGee's own calculations indicate it owed Gamble Simmons $982,156.70, Kerr-McGee must pay Gamble Simmons the balance due of $316,738.60 plus pre-judgment interest. Fourth, as an alternative to its third cause of action, Gamble Simmons asserted that based on the actual refund Kerr-McGee received from the Department of $1,274,732.10, the correct amount payable to Gamble Simmons based on Kerr-McGee's own calculation methods was $1,016,917.29, leaving an unpaid balance of $351,499.19 plus pre-judgment interest. Fifth, Gamble Simmons argued that even if the court found the contract did not permit it to share in interest Kerr-McGee received as part of the refund from the Department, the agreement at least entitles Gamble Simmons to its fee on the benefits conferred minus the interest. Gamble Simmons asserted this alternative amount was $787,498.94, and requested relief in the amount of the deficiency, $122,080.84, plus pre-judgment interest. Finally, in its sixth cause of action, Gamble Simmons contended Kerr-McGee breached the contract by refusing to allow Gamble Simmons to review Kerr-McGee's books for periods beyond 1982-1984, and as a result, Gamble Simmons suffered the loss of fees it could have generated through reviewing later years' records.

In September 1995, both parties filed simultaneous cross-motions for summary judgment to resolve Gamble Simmons' claims. The district court issued an order on June 20, 1996 in which it addressed the parties' motions and granted summary judgment in favor of Gamble Simmons in the amount of $769,850 less payments already made by Kerr-McGee. In reaching this conclusion, the district court decided the contract is not ambiguous and does not entitle Gamble Simmons to a portion of the interest paid to Kerr-McGee as part of the refund for overpayment. However, this initial interlocutory order did not dispose of all the issues in the case, and the parties subsequently filed additional cross-motions for summary judgment pertaining to the remaining issues.

On June 4, 1997, the district court issued a comprehensive Memorandum Opinion and Order covering the remaining claims. The court decided the contract entitles Gamble Simmons to forty percent of the 1982-1984 refund generated through its efforts; but, the agreement does not allow Gamble Simmons to collect forty percent of the incidental interest and penalty reductions in subsequent years resulting from the application of 1982-1984 tax refund to the later periods. The district court based its decision primarily on the fact that the incidental interest or penalty savings Kerr-McGee realized on the 1985-1987 audit were not based directly on Gamble Simmons' work product or information.

Additionally, the district court ruled the contract between the parties only contemplated a single audit involving the examination of Kerr-McGee's 1982-1984 records. The court refused to grant Gamble Simmons' request to review Kerr-McGee's 1985-1991 records for any other purposes. [1]

After the court's summary judgment rulings, the parties were unable to reach an accord on a proposed judgment as ordered by the court. Consequently, on October 27, 1997, the district court issued its own final judgment granting Kerr-McGee's motion for summary judgment and awarding Gamble Simmons $665,418 for its services – the exact amount Kerr-McGee had already paid.

On appeal, Gamble Simmons raises several issues. First, it contends the district court erred in finding Gamble Simmons was not entitled to a percentage of the interest the Department paid to Kerr-McGee as part of a refund for overpayment of taxes. Second, Gamble Simmons claims the district court should have considered extrinsic evidence it submitted regarding the formation of the agreement, the parties' subjective interpretations of the agreement, and certain

---

[1] The court noted the parties allowed Gamble Simmons to examine other years' records but only for purposes related to the 1982-1984 audit of Sales and Use taxes.

-7-

alleged admissions made by Kerr-McGee representatives regarding amounts owed to Gamble Simmons.  Third, Gamble Simmons argues the district court erred when it decided the agreement only covered the audit of tax years 1982-1984.  Fourth, Gamble Simmons claims the district court should have granted its Motion to Settle Contents, entered final judgment in its favor, and granted its motion for an evidentiary hearing on the contract interpretation issues.  Finally, in a consolidated appeal, Gamble Simmons disputes the district court's award of attorneys' fees to Kerr-McGee.

## II.  Standard of Review

Because this appeal is based solely on the district court's summary judgment rulings, we review the case *de novo*, employing the same legal principles as the district court and construing the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *See Byers v. Albuquerque* 150 F.3d 1271, 1274 (10th Cir. 1998); *Kane v. Capital Guardian Trust Co.*, 145 F.3d 1218, 1221 (10th Cir. 1998).  Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of material fact is genuine only if the nonmovant presents facts sufficient to show that a reasonable

jury could find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lawmaster v. Ward*, 125 F.3d 1341, 1346-47 (10th Cir. 1997). If our inquiry reveals no genuine issue of material fact in dispute, then we review the case to determine if the district court correctly applied the substantive law. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996).

## III. Contract Claims

The present case requires us to ascertain the intent of the parties as expressed under the terms of their agreement with regard to Gamble Simmons' compensation. We must decide what portion of the tax reduction and refunds attributable to Gamble Simmons' efforts are properly included as elements of its contingency fee under the agreement and what tax years the agreement encompasses.

As a preliminary matter, we emphasize the law of the forum where the contract is made or is to be performed generally governs contract actions of this sort. *Bohannan v. Allstate Ins. Co.*, 820 P.2d 787, 793 (Okla. 1991); *see also* Okla. Stat. tit. 15, § 162. In this diversity action the parties agree, and we find, the law of Oklahoma controls our inquiry.

In Oklahoma, a comprehensive statutory scheme governs contractual agreements. *See* Okla. Stat. tit. 15, §§ 151 - 178. These statutes provide that whenever possible we must give effect to mutual intent of the parties as expressed in the language of the contract, so long as it is unambiguous on its face and there exists no "fraud, accident, or pure absurdity" affecting the agreement. *Public Serv. Co. of Okla. v. Burlington Northern R.R. Co.*, 53 F.3d 1090, 1097 (10th Cir. 1995); Okla. Stat. tit. 15, § 154. If the contract is ambiguous, then we may resort to extrinsic evidence, including the subsequent statements and actions of the parties, in order to construe the agreement. *See Pierce Couch Hendrickson Baysinger & Green v. Freede*, 936 P.2d 906, 912 (Okla. 1997). However, if the contract is unambiguous its language is the only legitimate evidence of what the parties intended, *see Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d, 523m 529 (Okla. 1985), and we will not rely on extrinsic evidence to vary or alter the plain meaning. *See, e.g., Empire Oil & Ref. Co. v. Babson*, 77 P.2d 682, 684 (Okla. 1938) (ruling that resort to extraneous evidence is proper only if the contract is ambiguous.)

A.    The Question of Ambiguity

Because Gamble Simmons seeks to prove the parties' intent by utilizing extrinsic evidence, we must determine the admissibility of such evidence by first

-10-

deciding as a matter of law whether the terms of the contract between Kerr-McGee and Gamble Simmons are ambiguous. *Kerr-McGee Corp. v. Admiral Ins. Co.,* 905 P.2d 760, 762 (Okla. 1995). Oklahoma law states "[a] contract is ambiguous if reasonably susceptible of more than one interpretation." *Williams v. Shearson Lehman Bros., Inc*., 917 P.2d 998, 1004 (Okla. Ct. App. 1996), or "through vagueness of expression it has a double meaning." *See Cinocca v. Baxter Labs., Inc.*, 400 F. Supp. 527, 532 (E.D. Okla. 1975). In other words, a contract is ambiguous if reasonably intelligent persons, on reading the contract, would honestly differ as to its proper meaning. *See United States Fidelity & Guar. Co. v. Guenther*, 281 U.S. 34, 37 (1930).

In this case, we acknowledge the parties' basic disagreement over the interpretation of several provisions of the contract. However, the mere fact that the parties disagree about the meaning of a contract or argue for a different construction does not necessarily make the agreement ambiguous. A party cannot manufacture an ambiguity in a contract that is clear on its face merely by filing a lawsuit contesting its meaning or claiming an alternative interpretation. Moreover, if a contract is plain and unambiguous, it does not become ambiguous because its operation will work a hardship upon one of the parties and a corresponding advantage to the other. The dispositive factor in our analysis is

-11-

not whether the parties disagree or inequity results, but whether an examination of the entire agreement reveals more than one reasonable interpretation. *Bartmann v. Maverick Tube Corp*., 853 F.2d 1540, 1545 (10th Cir. 1988) (finding "[a] term is unambiguous where it is reasonably and fairly susceptible of only one meaning").

In order to decide whether the contract is ambiguous, we look at the whole contract and construe the words as they are "understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage." Okla. Stat. tit. 15, §160. In the present case, the parties' intent is apparent, regardless of whether the terms are read in their ordinary, legal, or technical sense. The compensation clause at the heart of this contract dispute plainly and succinctly enumerates the elements of tax savings properly included in calculating Gamble Simmons' contingency fee, as well as the tax years for which Gamble Simmons is permitted to perform its services. Although Gamble Simmons urges us to find the terms ambiguous and thereby allow the introduction of extrinsic evidence tending to contradict the express contract language, we decline to indulge its strained construction of the agreement to "create and then construe an ambiguity so as to import a favorable consideration to either party

than that expressed in the contract." *Kerr-McGee,* 905 P.2d at 763 (internal quotation marks & citation omitted); *see also Max True Plastering Co. v. United States Fidelity & Guar. Co.*, 912 P.2d 861, 869 (Okla. 1996) (refusing to indulge in constrained interpretations of contracts to find ambiguity). Our review of the record reveals contract terms that are unambiguous, readily understood, and not "fairly susceptible" of various interpretations. Therefore, in the absence of any "fraud, deception, or unfair dealing" by either party in procuring the agreement, or "legal impediment shown" that prevented the parties from entering into the contract and expressing it in language of their own choosing, we will not resort to extrinsic evidence to interpret or revise the agreement. *Northwestern Oil & Gas Co. v. Branine*, 175 P. 533, 534 (Okla. 1918). [2]

### B.    Applying the Terms of the Contract

Having decided the contract is unambiguous and a clear reflection of the parties' intentions, we now apply the terms of the contract to resolve the

---

[2] Because we find the terms pertaining to contested issues in this lawsuit unambiguous, we ignore Gamble Simmons' proposed evidence of telephone conversations with Kerr-McGee representatives and any other extrinsic evidence tending to disturb or alter the plain meaning of the contract terms. *See Prudential Ins. Co. v. Glass,* 959 P.2d 586, 594 (Okla. 1998) (ruling that if a contract is complete in itself and is unambiguous when viewed in its entirety, "its language is the only legitimate evidence of what the parties intended").

contested contractual issues in this case. The agreement plainly reveals the parties' intent with regard to both the amounts to include in calculating Gamble Simmons' contingency fee and the permissible scope of its right to review Kerr-McGee's records.

### 1. Refund Amounts Properly Included the Contingent Fee

In terms of compensation, the contract states that Gamble Simmons should receive

> an amount equal to forty percent (40%) of the amount, if any, by which the *total amounts* of taxes, penalties and/or interest calculated through the date of this Agreement *heretofore paid* by Kerr-McGee to its vendors, the State of Louisiana and/or *assessed* by the Department but remain unpaid as of the date hereof, are refunded or reduced ....

(Emphasis added). Interpreting this clause, the district court correctly decided the agreement entitles Gamble Simmons to no more compensation for its services than forty percent of any refund or reduction in taxes previously paid or assessed as part of the 1982-1984 audit. In other words, the statutory interest the Department included as part of the refund to Kerr-McGee is not an amount subject to Gamble Simmons' contingency fee under the contract because it does not reflect an amount paid by Kerr-McGee or assessed against it for the years 1982-1984. The statutory interest actually represents a reasonable return on the amount the Department erroneously charged Kerr-McGee in prior years.

-14-

Nowhere does the contract contemplate Gamble Simmons sharing in this statutory interest either expressly or impliedly. We note, however, the contract provides Gamble Simmons should receive forty percent of the refund or reduction based on the total amount of 1982-1984 taxes overpaid or assessed in 1982-1984, regardless of whether the overpayment is actually repaid directly to Kerr-McGee or applied to later years' tax liability – as long as those amounts are based on Gamble Simmons' efforts during the its review of the 1982-1984 audit.

We find Gamble Simmons' counter-arguments on this point unavailing. Our interpretation of the contract does not, as Gamble Simmons contends, render the term "refund" in the contract a nullity. Rather, it reflects the intent of the parties as clearly expressed in the terms of the contract by giving effect to the meaning of "refund" as used in conjunction with other language in the contract to limit Gamble Simmons' contingency fee to refund amounts "heretofore paid" by Kerr-McGee or "assessed" by the Department. Moreover, our reading of the contract does not have the effect of eliminating the reduction of assessed interest as part of Gamble Simmons' contingent compensation. On the contrary, we recognize the contract clearly requires Kerr-McGee to pay Gamble Simmons its contingent share of reductions in interest assessed against Kerr-McGee for the 1982-1984 audit period. The "interest" not subject to Gamble Simmons'

-15-

contingent fee is the statutory interest awarded to Kerr-McGee as part of the refund for overpayment.

We are similarly unpersuaded by Gamble Simmons' argument asserting that because Louisiana Rev. Stat. Ann. § 47:1624(A) mandates the payment of interest as part of a Department refund for tax overpayments, the statute must be read into Gamble Simmons' contract with Kerr-McGee to make the term "refund" include the statutory interest. Gamble Simmons' argument on this point refers to a sound legal principle of contract construction which states " *unless the contract discloses a contrary intention*, an existing statute will be read into it to the same effect as an express provision." *United States v. Essley,* 284 F.2d 518, 520 (10th Cir. 1960) (emphasis added). Nevertheless, we question the applicability of this principle in the present case because the contract expresses an intention contrary to the statute. Again, we emphasize the terms of the contract expressly limit Gamble Simmons' contingent share to amounts "heretofore paid" or "assessed" that are "refunded or reduced." In light of this limiting language in the contract that discloses an intention not to include the statutory interest as part of the refund, we decline to interpret the term refund as used in the contract to incorporate Louisiana Rev. Stat. Ann. § 47:1624(A).

-16-

All other arguments aside, the basic problem with Gamble Simmons' position is that it urges us to imply contract provisions that simply are not there. For example, in its brief Gamble Simmons states that "paragraph 4 of the Agreement clearly contemplates that to the extent Kerr-McGee *received any benefit* in reduction of taxes, interest and penalties, Gamble Simmons' fee would be 40% thereof." (Emphasis added). However, Gamble Simmons' statement does not reflect the agreement of the parties as expressed in the unambiguous terms of the contract. The agreement between the parties is not to pay Gamble Simmons a portion of any *benefit* Kerr-McGee received through Gamble Simmons' efforts, but a contingent interest in the amount by which Gamble Simmons' services resulted in the refund or reduction of taxes, interest, and/or penalties previously paid by Kerr-McGee or assessed by the Department during the audit period. The contract enumerates a specific range of compensable interests, not the wide-open "benefit" approach Gamble Simmons advocates.

2. Application of the Refund to Subsequent Years' Tax Liability

We also agree with the district court's assessment with regard to the application of the contract to later years' taxes. Gamble Simmons is only entitled to its contingent share of the refund or reduction in amounts previously paid or assessed for tax years 1982-1984, whether such amounts are actually paid directly

-17-

to Kerr-McGee or applied to later years' taxes.

In addition to its share of the 1982-1984 refund amounts applied to Kerr-McGee's 1985-1987 tax liability, Gamble Simmons also claims Kerr-McGee owes it forty percent of the interest reductions Kerr-McGee realized in the 1985-1987 audit period through application of the 1982-1984 refund. However, Gamble Simmons' claim again contravenes the language of the contract. Our reading of the agreement persuades us that Gamble Simmons is entitled to compensation only for whatever amount its efforts *directly* caused the Department to refund or reduce taxes, interest and penalties previously paid by or assessed against Kerr-McGee with regard to the 1982-1984 audit. The indirect, incidental benefit of interest reduction that occurred as a result of the Department's unilateral application of a portion of the 1982-1984 refund to Kerr-McGee's later years' tax liability is not subject to Gamble Simmons' forty percent contingent fee because the interest reduction is not the *direct result* of Gamble Simmons efforts with regard to its 1982-1984 audit review. In other words, the incidental benefit to Kerr-McGee for the interest reduction in 1985-1987 represents the consequence of the Department's decision to apply the 1982-1984 refund to subsequent audits – *not* the result of Gamble Simmons' efforts.

This result makes sense if we hypothesize for a moment about what amount Gamble Simmons would have received if the Department had refunded the entire sum directly to Kerr-McGee and not applied any amount toward subsequent tax liabilities. Under those circumstances, Gamble Simmons would still receive its forty percent share of the refunded amount as provided by the contract, but it would have no further claim for compensation from any incidental or secondary financial benefit Kerr-McGee might enjoy through the productive use of the refund. For example, if Kerr-McGee took the refund and immediately paid off an outstanding debt, Gamble Simmons clearly would not have a viable claim for a share of the interest savings Kerr-McGee would realize from the transaction. Likewise, if Kerr-McGee took the refund and immediately paid its tax liability for the 1985-1987 audit, Gamble Simmons would have no claim to the accompanying reduction in interest on the tax liability. We see no difference of any significance between these hypothetical examples and what actually happened in the present case. The Department's unilateral decision to apply a portion of the 1982-1984 refund to the later audit has the same effect as if Kerr-McGee itself had received the refund and immediately paid its 1985-1987 tax liability.

If the contract had stated the parties' intention for Gamble Simmons to not

only share in the reduction or refund of taxes, penalties or interest Kerr-McGee

realized from Gamble Simmons efforts with regard to the 1982-1984 audit,       *but*

*also* whatever incidental reduction resulted from the application of the 1982-1984

refund to later years' tax liability, then Gamble Simmons would have a viable

claim for its share of the incidental benefit.  However, understood in its entirety,

the contract simply does not evidence Gamble Simmons' right to share in the

secondary benefits realized by Kerr-McGee through the Department's unilateral

application of the 1982-1984 refund to the 1985-1987 audit.  Therefore, we

affirm the district court's conclusion that refunds and reductions in taxes,

penalties, and interest previously paid or assessed in 1982-1984 are subject to

Gamble Simmons' forty percent fee, but the incidental reductions in interest or

penalties resulting from the application of the 1982-1984 refund are not.       [3]

---

[3] Gamble Simmons makes a very puzzling argument in its brief contesting the district court's finding on this issue we feel compelled to address.  It asserts that if the district court's conclusion regarding the interpretation of the contract is taken to its logical extreme, it would mean Gamble Simmons would receive no compensation if the entire refund it generated had been applied to subsequent years' taxes, interest, and penalties.  If this is Gamble Simmons' understanding of the district court's ruling, we believe it has misinterpreted the findings.  Our decision to deny Gamble Simmons any  compensation for benefits realized by Kerr-McGee from the application of a portion of the refund to subsequent years' taxes under the terms of the contract, in no way means Gamble Simmons would get nothing for its services if the refund was applied entirely to subsequent years. On the contrary, Gamble Simmons is entitled to everything the contract allows – forty percent of taxes, interest, and/or penalties previously paid or assessed during the 1982-1984 audit period which the Department  refunded or reduced because of Gamble Simmons  efforts.  As long as the refund represents such amounts, Gamble

3.     Access to Later Years' Records

To the extent Gamble Simmons requests access Kerr-McGee's records for later years' taxes, we find the terms of the contract do not so provide. The agreement only allows

> Gamble Simmons to review Kerr-McGee's books and records with respect to transactions involving Louisiana Sales and Use Taxes for the applicable statutory periods for the purpose of evaluating said audits and assessments and advising Kerr-McGee with respect thereto ....

Although, viewed in isolation, this provision contains no express limitations on Gamble Simmons' asserted right to audit Kerr-McGee's records, we must interpret it in light of the entire contract. *See* Okla. Stat. Ann. tit. 15, § 157 (1991) ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."). In addition to the clause noted, the contract also contains other provisions that lend context and perspective to our application. The opening recitals are especially helpful to objectively analyze the intent of the parties with regard to the scope of the audit. They discuss the Department's audit of Kerr-

<hr />

Simmons is entitled to its share whether the refund is paid directly to Kerr-McGee or applied to subsequent years. What Gamble Simmons does not share in as part of its compensation, is the resulting incidental tax, penalty and/or interest reduction realized through application of the refund to later tax years because that reduction is not directly attributable to services Gamble Simmons performed in its review of the 1982-1984 audit.

McGee's Sales and Use taxes paid in 1982-1984, and imply that the Department's audit was the driving force behind Kerr-McGee's decision to contract for Gamble Simmons' services. Using these initial recitals as a backdrop, we find the only reasonable construction of the subsequent terms of the contract is that the parties intended to limit the scope of Gamble Simmons' work to the 1982-1984 audit. When the contract refers specifically to "the applicable statutory periods", we believe that clause plainly makes reference to the aforementioned 1982-1984 audits discussed in the opening recitals of the contract, not "applicable statutory periods" in the some general sense. Accordingly, we find the agreement contains no compelling support for Gamble Simmons' argument that it is entitled to examine Kerr-McGee's records for additional statutory periods, other than where necessary as incidental to its audit for 1982-1984. [4]

---

[4] Moreover, even if we strained the language to find the contract allowed Gamble Simmons to review later tax years, in no way does the contract indicate the parties mutually agreed to have Gamble Simmons perform its services and receive compensation for tax years beyond the 1982-1984 period specifically discussed in the opening recitals of the contract.

IV. Post-Summary Judgment Proceedings

A.     Background

Following the district court's June 4, 1997 Memorandum & Order granting Kerr-McGee's motion for summary judgment, the court instructed the parties to submit a proposed final judgment reflecting the court's ruling. However, negotiations failed and the parties were unable to reach an accord regarding the content of the final judgment. The parties essentially disagreed about how to calculate Gamble Simmons' final compensation, while giving effect to the district court's interpretation of the contract. The major point of contention was whether to exclude from Gamble Simmons' compensation certain refunds the Department made to Kerr-McGee of payments Kerr-McGee rendered after the execution of the agreement (hereinafter "post-agreement payments"). Because the parties could not agree, Gamble Simmons filed a motion to settle the contents of the final judgment and a request for an evidentiary hearing on the compensation calculation issue. After consideration of the parties' arguments, the district court denied Gamble Simmons' post-summary judgment motion to settle contents and request for an evidentiary hearing in an order dated October 27, 1997. In its order, the district court stated its summary judgment orders already resolved all the issues presented, and it would enter judgment in favor of Kerr-McGee.

In its brief on appeal and in post-summary judgment proceedings before the district court, Gamble Simmons argues that even under the contractual interpretation outlined in the district court's orders, Kerr-McGee still owes money for services Gamble Simmons rendered. In support of its contention, Gamble Simmons submits an affidavit including calculations showing that, even excluding statutory interest refunded to Kerr-McGee and any benefit to Kerr-McGee from the application of the refund to later audits as instructed by the district court, Gamble Simmons still produced a benefit to Kerr-McGee in tax, penalty and interest refunds and reductions totaling $1,750,446.75. After taking forty percent of that amount ($700,178.70) and subtracting what Kerr-McGee has already paid ($665,418.10), Gamble Simmons claims Kerr-McGee still owes it the difference of $34,760.60 plus prejudgment interest.

In reply to Gamble Simmons' arguments, Kerr-McGee claims it has paid Gamble Simmons everything it owes, and explains the relatively small monetary difference between the amount it paid and the amount Gamble Simmons requests as attributable to certain "post-agreement payments" it made to the state of Louisiana. Kerr-McGee claims it made these payments to satisfy tax liabilities arising from Department audits encompassing the years 1985-1987, and that the Department later refunded the payments after it determined Kerr-McGee had

overpaid its tax liabilities for 1982-1984.  Kerr-McGee argues that because it made the payments after contracting with Gamble Simmons, it need not include these amounts in its compensation calculations.  In support of this claim, Kerr-McGee cites the terms of the contract which limit Gamble Simmons contingent interest to forty percent of any refund or reduction of amounts paid or assessed *as of the date of the agreement*.

        B.      Discussion

We agree with Kerr-McGee to the extent that the contract unambiguously limits Gamble Simmons' compensation to payments or assessments made prior to the execution of the agreement.  The contract specifically requires Kerr-McGee to pay Gamble Simmons forty percent of any reduction or refund in "total amounts of taxes, penalties and/or interest calculated *through the date of this Agreement*." (Emphasis added).  In other words, Gamble Simmons has no viable claim under the strict contractual language to any refund of payments Kerr-McGee made, if any, subsequent to the agreement date.  The contract is clear on this point, and its interpretation is properly the subject of summary adjudication.  Nevertheless, we find the court's order problematic because it does not specifically address the issue of the alleged post-agreement payments, or sufficiently explain its rationale for determining that Kerr-McGee only owes Gamble Simmons what it had

-25-

previously paid.

In our estimation, the district court simply ignored a valid, additional issue raised by Gamble Simmons at this stage in the proceedings, specifically Kerr-McGee's alleged post-agreement payments. We find no evidence of such payments in Kerr-McGee's brief on appeal or in the proceedings below. In its brief, Kerr-McGee makes a general citation to the affidavit of its Assistant Tax Director for Research and Audits to support its claim. However, Kerr-McGee never explains how or where the affidavit shows any evidence of post-agreement payments, nor does our independent study of the affidavit reveal any support for Kerr-McGee's post-agreement payment claim. [5]

We are simultaneously baffled and disturbed by the district court's sudden adoption of Kerr-McGee's calculations as the basis of final judgment, especially since we find nothing in the record to substantiate Kerr-McGee's claimed post-

---

[5] Perhaps somewhere buried in the record there is some support for Kerr-McGee's position, but our review found no evidence either in the affidavit or other portions of the record. In the absence of sufficient citation to record support for a party's allegations, we decline to search for the proverbial needle in a haystack. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995). If we have overlooked some crucial evidence, the parties will no doubt expose it on remand.

agreement payments. Consequently, we must reverse the district court to the extent its decision rests upon Kerr-McGee's unsubstantiated assertions of post-agreement payments. We remand for further proceedings with regard to the discrete issue of the post-agreement payments and their effect on the ultimate calculation of Gamble Simmons' compensation. On remand, the district court should afford the parties the opportunity to present evidence on the issue of the disputed post-agreement payments and provide a final, accurate calculation of Gamble Simmons' compensation based on our rulings in this case. As the case now stands on the record before us, we find no evidence to support the court's summary judgment relating to the discrete issue of post-agreement payments and the effect, if any, on the amount owed to Gamble Simmons for its services under the contract.

## V. Attorneys' Fees

As part of this consolidated appeal, we also consider Gamble Simmons' challenge to the district court's award of attorneys' fees and costs to Kerr-McGee. In its first claim of error, Gamble Simmons asserts the district court should have stayed the determination of costs and attorneys' fees pending our review of the underlying contract issues. Second, Gamble Simmons argues the district court committed error by failing to make findings of fact and conclusions

of law regarding the award of attorneys' fees and refusing to grant an evidentiary hearing on the reasonableness of the attorneys' fees. Finally, Gamble Simmons claims the district court's ultimate award of attorneys' fees to Kerr-McGee was unreasonable.

Oklahoma law provides "[i]n any civil action to recover on ... [a] contract relating to ... labor or services, ... the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs." Okla. Stat. tit. 12, § 936. The award of attorneys' fees to the prevailing party under this provision is mandatory. *Arkla Energy Resources v. Roye Realty and Developing, Inc* ., 9 F.3d 855, 865 (10th Cir.1993) (citing *Ellis v. Lebowitz* , 799 P.2d 620, 621 (Okla. 1990)). However, the determination of reasonableness and amount of the fee award is generally left to the sound discretion of the district court. *Harris Mkt. Research v. Marshall Mktg. & Communitcations, Inc.* , 948 F.2d 1518, 1527 (10th Cir. 1991) (applying an abuse of discretion standard and noting "an appellate court plays a 'limited role' in reviewing a district court's award of attorneys' fees and costs, and deference is given to a district court's judgment on the matter, since the court is in a better position to assess the course of litigation and quality of work." (Internal quotation marks & citation omitted)). Often, a hearing may be necessary to resolve material factual disputes between

the parties over the reasonableness and amount of attorneys' fees, *see Michael A. Cramer, MAI, SRPA, Inc. v. United States*, 47 F.3d 379, 383 (10th Cir. 1995) (finding "an evidentiary hearing is generally preferred, if not required, when factual diputes exist in connection with a request for attorneys fees"), unless the district court determines it has sufficient knowledge to make a decision without a hearing based on its experience with the case, and briefs and affidavits submitted by the parties *id.* at 383-84; *Harris Mkt. Research*, 948 F.2d at 1528 (affirming grant, without evidentiary hearing, of prevailing party's request for attorneys' fees pursuant to contract where "[n]o hearing was necessary to aid the trial court's determination").  In any event, the district court should consider:  (1) what attorney services were performed; (2) which services were necessary; (3) the value of the necessary services; and (4) what a reasonable fee for the services would be. *Darrow v. Spencer*, 581 P.2d 1309, 1314 (Okla. 1978).  The court should then make an adequate record of its findings in the event appellate review is required. *See King v. McCord*, 621 F.2d 205, 207 (5th Cir. 1980) (holding district court's ruling on attorneys' fees without proper explication of its rationale renders appellate review of the award a "meaningless gesture").

Although these principles establish the bases for our review of an attorneys' fees award, we decline to address any of the procedural and

substantive issues raised by Gamble Simmons at this point. Although the parties' dispute over attorneys' fees would have been ready for our review had we affirmed the district court's judgment in all respects, because our decision to reverse in part and remand for further proceedings may require the district court to alter or amend its final judgment, we feel a decision on the merits of the attorneys' fees claim would be premature. If, for example, the district court ultimately determines Kerr-McGee still owes Gamble Simmons some degree of compensation, the court may alter its decision regarding the amount of attorneys' fees to award or perhaps even change who qualifies as the "prevailing party" under Okla Stat. tit. 12, § 936. Accordingly, due to the unsettled nature of the underlying judgment, we refrain from rendering an opinion on the attorneys' fees issues raised by Gamble Simmons. We leave the attorneys' fees issue open for unfettered reconsideration by the district court at the conclusion of these proceedings on remand.

## VI. Conclusion

In summary, upon *de novo* review of these proceedings, we find the contract between Gamble Simmons and Kerr-McGee is unambiguous and any extrinsic evidence tending to alter the reasonable interpretation of the agreement is inadmissible. The contract clearly indicates Gamble Simmons should receive

forty percent of the amount by which its efforts caused the Department to refund or reduce Kerr-McGee's taxes, penalties and/or interest previously paid or assessed for 1982-1984. Accordingly, Gamble Simmons' contingent fee should not include statutory interest included as part of the Department's refund paid to Kerr-McGee, additional benefits realized by Kerr-McGee from the application of a portion of the refund to tax liabilities for later years, or post-agreement payments, if any, later refunded to Kerr-McGee. Also, we find the contract does not permit Gamble Simmons to review Kerr-McGee books and records for later years, other than incident to Gamble Simmons' review of the 1982-1984 audit. Therefore, we affirm the decision of the district court to the extent its summary judgment rulings reflect these conclusions. However, we reverse in part and remand for the district court to consider whether Kerr-McGee's claimed post-agreement payments find sufficient evidentiary support to merit summary adjudication. Finally, in light of our decision, we decline to address the issues pertaining to the district court's award of attorneys' fees pending the outcome of the proceedings on remand.

We **AFFIRM** in part, **REVERSE** in part and **REMAND** for further proceedings consistent with this opinion.